**ARMSTRONG CORK COMPANY and Armstrong World Industries, Inc., Plaintiffs-Appellants, Cross-Appellees,**

v.

**WORLD CARPETS, INC., et al., Defendants-Appellees, Cross-Appellants.**

No. 78–1919.

United States Court of Appeals, Fifth Circuit.

June 21, 1979.

Rehearing Denied Aug. 10, 1979.

Oscar M. Smith, Rome, Ga., David H. T. Kane, Siegrun D. Kane, Kane, Daleimer, Kane, Sullivan & Kurucy, New York City, for plaintiffs-appellants.

Mitchell, Mitchell, Coppedge, Boyett, Wester & Bates, Warren N. Coppedge, Jr., James H. Bisson, III, Dalton, Ga., Beveridge, DeGrandi, Kline & Lunsford, Julius R. Lunsford, Jr., Atlanta, Ga., for defendants-appellees.

**498**

Before BROWN, Chief Judge, COLEMAN and TJOFLAT, Circuit Judges.

JOHN R. BROWN, Chief Judge:

In this case, we fly by magic carpet through the exotic and esoteric realm of trademark law and the Lanham Act, 15 U.S.C.A. §§ 1051–1127. Armstrong Cork Company (Armstrong), plaintiff below, appeals from a District Court order enjoining Armstrong from using its proposed new corporate name, Armstrong World Industries, Inc. World Carpets, Inc. (World), defendant below, appeals from the District Court's ruling that Armstrong had not violated the Georgia Fair Business Practices Act of 1975, Ga.Code Ann. §§ 106–1201 to 1217. The main issue on appeal is whether the District Court was correct in ruling that Armstrong's use of its proposed corporate name would infringe World's rights in its registered trademarks WORLD and WORLD with a globe symbol. We conclude that the District Court's finding of trademark infringement was incorrect. The District Court's order of injunction is reversed and its ruling on the state law issue is affirmed.

## I. In The Beginning

### The Carpetbaggers

Armstrong is a Pennsylvania corporation that manufactures home furnishing products, including hard surface flooring, ceiling material, furniture, and carpeting. Armstrong has ten foreign subsidiaries and affiliates located in eight foreign countries. Armstrong's products are sold in over 100 countries. From 1950 to 1976, Armstrong spent approximately 180 million dollars in advertising.

Armstrong sells its products under various trademarks, such as Armstrong with a circled *A* and Evans & Black. Armstrong is also the owner of registered trademarks INDOOR WORLD and THE INDOOR WORLD, which refer to Armstrong's interior decorating services and cotton piece goods.

Although Armstrong is best known for its hard surface flooring products, Armstrong is also a manufacturer of tufted carpets. In the early part of this century, Armstrong manufactured or sold carpet under various trade names, culminating with the Deltox label that was discontinued in the early 1960's. In 1966, Armstrong acquired Brinton Carpets, a Canadian producer of woven and tufted carpeting. In 1967, Armstrong acquired Evans & Black of Texas and Georgia, a tufted carpet producer. Armstrong is now one of the largest producers of carpets. As required by federal law, the Armstrong corporate name appears on every label of carpet manufactured or warranted by Armstrong.

Since 1973, Armstrong has operated a wholly-owned subsidiary, Pacific World. Pacific World is the wholesale distributor of Armstrong carpets in California and the surrounding areas. Pacific World has approximately six to seven million dollars in annual sales.

For some time now, Armstrong has been considering a name change. Because cork has ceased to be a significant part of Armstrong's product line, Armstrong's executives concluded that the corporate name Armstrong Cork Company no longer provided an appropriate description of Armstrong's business. Deciding to change to a corporate name that was "more reflective of what the Armstrong Cork Company is today," Armstrong embarked upon what has been a rocky road to name change. Testimony of James Binns, Pres., Armstrong Cork Co.

Before deciding upon Armstrong World Industries, Inc., Armstrong considered other names, such as Armstrong International, Armstrong Industries, and Armstrong Indoor World Industries. Armstrong International and Armstrong Industries could not be cleared for use in certain states because of existing companies with identical names. Armstrong Indoor World Industries was not adopted because it was considered too restrictive.

Armstrong eventually settled upon the name Armstrong World Industries, Inc. The proposed name was approved by Armstrong's shareholders in 1977. Armstrong then formed a Delaware nameholder corporation, Armstrong World Industries, Inc., and received permission to do business in that name in all fifty states.

At this point, World pulled the rug from under Armstrong's corporate feet, objecting to the proposed name change.

### The Rug Beaters

World is a Georgia corporation manufacturing tufted textile carpets in a variety of styles and colors. Organized in 1954, World is a closely-held corporation with subsidiaries in seven metropolitan areas throughout the United States and with export sales in twenty-five countries, including Australia, England, Germany, and Japan. World's annual sales exceed 100 million dollars. World has an established reputation in the carpet industry as a "trend setter." Nationwide, World has spent approximately eighteen million dollars on newspaper, magazine, and television advertising.

World is the owner of federal registered trademarks WORLD and WORLD with a globe symbol. The federal trademark WORLD has become incontestable under Section 15 of the Lanham Act, 15 U.S.C.A. § 1065.

World and Armstrong are major competitors in the carpeting industry. Their manufacturing processes are similar. They have similar sales and distribution methods. For example, the companies frequently market their products through the same retail stores. Both companies typically furnish distributors and retailers with sample books, display racks, and other promotional materials. Armstrong and World both advertise in the same magazines, often on adjacent pages. The companies use the same toll-free telephone number for consumer inquiries.

### II. How It Went: A Rug By Any Other Name

When efforts to resolve the name change dispute failed, Armstrong brought this declaratory judgment action, seeking a ruling that its proposed new corporate name did not infringe or unfairly compete with World's rights in its registered trademarks, WORLD and WORLD with a globe symbol.[1] World counterclaimed for an injunction restraining Armstrong's use of the new name and for damages and attorneys fees for violations of the Georgia Fair Business Practices Act of 1975, Ga.Code Ann. §§ 106 1201 to 1217. A jury was impaneled for a determination of World's counterclaim for damages. The jury found that World was not entitled to exemplary or punitive damages. The jury also made advisory findings of fact that Armstrong's use of the proposed name was likely to cause confusion, was not a good faith, fair, and descriptive use of the word World, and was an unfair trade practice. The District Court then made its own findings of fact and conclusions of law and enjoined Armstrong from using the proposed name.

The District Court held that World was entitled to injunctive relief because Armstrong carpet sold by Armstrong World Industries, Inc. would likely be confused with carpet sold by World and that therefore Armstrong's use of its proposed corporate name would infringe World's trademark rights.[2] The Court further held that Arm-

---

**1.** For an example of the latter trademark, see World's carpet label, reproduced *infra*, at 503.

**2.** Lanham Act § 32(1), 15 U.S.C.A. § 1114(1), sets forth the elements of an action for infringement of a registered trademark:

(1) Any person who shall, without the consent of the registrant—

(a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive; or

(b) reproduce, counterfeit, copy, or colorably imitate a registered mark and apply such reproduction, counterfeit, copy, or colorable imitation to labels, signs, prints, packages, wrappers, receptacles or advertise-

strong could not claim protection under the "fair use" defense of Section 33(b)(4) of the Lanham Act.[3]

The Court ruled against World on the state law issue, finding that Armstrong had not passed off its goods as those of World and that no one was actually confused by the proposed name change. The Court upheld the jury's refusal to award damages to World.

■ On this appeal, Armstrong attacks the holdings adverse to it. World attacks the District Court's resolution of the state law issue. We need discuss only one of these challenges.[4]

> ments intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive.
>
> shall be liable in a civil action by the registrant for the remedies hereinafter provided.
> * * *

3. Section 33(b)(4) of the Lanham Act, 15 U.S. C.A. § 1115(b)(4), codifies the common law principle of "fair use," under which a party is protected in certain uses of a registrant's otherwise exclusive trademark:

> (b) If the right to use the registered mark has become incontestable under section 1065 of this title, the registration shall be conclusive evidence of the registrant's exclusive right to use the registered mark in commerce
> . . .
>
> except when one of the following defenses or defects is established:
> *   *   *   *   *   *
>
> (4) That the use of the name, term, or device charged to be an infringement is a use, otherwise than as a trade or service mark, of the party's individual name in his own business, or of the individual name of anyone in privity with such party, or of a term or device which is descriptive of and used fairly and in good faith only to describe to users the goods or services of such party, or their geographic origin   .   .   . .

4. We affirm the District Court's ruling against World on its claim under the Georgia Fair Business Practices Act of 1975. World has failed to prove that Armstrong has engaged in "unfair or deceptive consumer transactions" or unlawful "consumer acts or practices." See Ga.Code Ann. § 106–1203(a). Our resolution of the in-

### III.   The Legal Standard:   Confusion Reigns

In a trademark infringement case, the controlling issue is whether the alleged infringer's imitation of a registered mark is "likely to cause confusion, or to cause mistake, or to deceive   .   .   . ." Lanham Act § 32(1), 15 U.S.C.A. § 1114(1); *Roto-Rooter Corp. v. O'Neal*, 5 Cir., 1975, 513 F.2d 44; *World Carpets, Inc. v. Dick Littrell's New World Carpets*, 5 Cir., 1971, 438 F.2d 482; *Continental Motors Corp. v. Continental Aviation Corp.*, 5 Cir., 1967, 375 F.2d 857; *American Foods, Inc. v. Golden Flakes, Inc.*, 5 Cir., 1963, 312 F.2d 619.[5]

fringement issue makes it unnecessary to reach Armstrong's "fair use" defense.

5. From this "likelihood of confusion" test, two further questions emerge—confusion about what? and confusion of whom?

> Until 1962, trademark infringement was based upon confusion of goods or businesses. See Act July 5, 1946, ch. 540, § 32, 60 Stat. 437. Under the Lanham Act, as amended, however, Congress adopted an open-ended concept of confusion. See Act Oct. 9, 1962, Pub.L. No. 87–772, § 17, 76 Stat. 773. Any kind of confusion will now support an action for trademark infringement:

> > A likelihood of confusion attributable to use of a similar trademark need no longer be predicated upon the claim that the public may be misled because there is a similarity between the goods or businesses.  We may now refer not only to this "relative" confusion, but also to a concept of absolute confusion, one that arises out of another's use of a similar mark in connection with a product or business wholly unrelated, or even alien, to that of the trademark owner.

> 3 R. Callmann, The Law of Unfair Competition Trademarks and Monopolies § 80, at 539 (3d ed. 1969) (footnotes omitted) [hereinafter cited as Callmann].  *See also Continental Motors Corp. v. Continental Aviation Corp.*, 375 F.2d at 860 n. 8.

> We decide the "confusion of whom" issue in terms of the product's typical buyer. *Kentucky Fried Chicken Corp. v. Diversified Packaging Corp.*, 5 Cir., 1977, 549 F.2d 368, 369 n. 26; *E. & J. Gallo Winery v. Ben R. Goltsman & Co.*, M.D.Ala., 1959, 172 F.Supp. 826, 829.  "The general impression of the ordinary purchaser, buying under the normally prevalent conditions

Therefore, as the District Court rightly observed, the case turns upon the correctness of the District Court's finding that Armstrong's use of World's trademark in its corporate name created a likelihood of confusion in the minds of the carpet buying public.[6]

■ The finding of likelihood of confusion is one of fact and is therefore reviewed by this Court under the "clearly erroneous" test of F.R.Civ.P. 52(a). *T. G. I. Friday's, Inc. v. International Restaurant Group, Inc.*, 5 Cir., 1978, 569 F.2d 895; *Holiday Inns, Inc. v. Holiday Out In America*, 5 Cir., 1973, 481 F.2d 445. The question for us is whether the District Court's finding of likelihood of confusion was clearly erroneous.

■ A finding of fact of the District Court is clearly erroneous "when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.*, 1948, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746. In other words, we reverse when the result in a particular case does not reflect the truth and the right of the case. *W. R. B. Corp. v. Geer*, 5 Cir., 1963, 313 F.2d 750, 753, *cert. denied*, 379 U.S. 841, 85 S.Ct. 78, 13 L.Ed.2d 47. We have such a result here. Having considered all the evidence in this case, we are convinced that the District Court was mistaken when it found that Armstrong's use of its proposed corporate name would create a likelihood of confusion with World, World's products, or any other aspect of World's business.

## IV.   The Standard Applied:  Who's Confused?  By What?

■ A finding of likelihood of confusion is based upon an evaluation both of the marks themselves and of certain extrinsic conditions, such as the parties' business operations or the intent of the alleged infringer.[7] The evaluation of the marks themselves is of course the most important consideration, for it is in their similarity that the roots of the confusion lie. *See Kentucky Fried Chicken Corp. v. Diversified Packaging Corp.*, 549 F.2d at 386; *B. H. Bunn Co. v. AAA Replacement Parts Co.*, 5 Cir., 1971, 451 F.2d 1254, 1261; *I. T. S. Industria Tessuti Speciali v. Aerfab Corp.*, S.D.N.Y., 1967, 280 F.Supp. 581, 586; Callmann, *supra* note 5, § 80, at 538.

In this case, although the District Court found similarities in Armstrong's and World's business operations, the Court based its finding of likelihood of confusion primarily upon findings of similarities in the companies' products and marks.[8] The Court found that the companies' carpets were, without the federally required label, indistinguishable. Findings of Fact No. 31. This factor, coupled with what the Court considered to be the "substantial similarity" in the companies' marks, was the deciding consideration leading to the Court's finding of likelihood of confusion: "The carpet products are so closely related that use of substantially similar marks would create a strong likelihood of confusion." *Id.*

Of course, the findings of similar marks and products are also governed by the clear-

---

of the market and giving the attention such purchasers usually give in buying that class of goods, is the touchstone." Callmann, *supra*, § 81.2, at 577 (footnote omitted).

**6.** Armstrong would concede that when the alleged infringer is a newcomer, the test for trademark infringement is not whether there is a likelihood of confusion, but whether there is any possibility of confusion. This Circuit has not adopted that position, and we see no reason to add such a gloss to the language of 15 U.S.C.A. § 1114. Of course, the alleged infringer's newcomer status, and particularly his

knowledge of the trademark owner's prior use, are relevant factors in determining the question of likelihood of confusion. They do not, however, change the legal standard.

**7.** See Restatement Torts § 729 (1938).

**8.** We recognize that a corporate name is technically not a mark, but for simplicity's sake, we will use the term "mark" to refer to Armstrong's proposed corporate name as well as to World's trademark.

ly erroneous standard. In this case, it is an error in one of these findings that tars the finding of likelihood of confusion with the brush of clear error. The Court's finding that Armstrong's proposed name and World's trademark are "substantially similar" is clearly erroneous, and without this finding, the finding of likelihood of confusion cannot stand.

■■■ The mere fact that Armstrong's proposed corporate name contains the word *World* does not, of itself, make the name "substantially similar" to World's trademark. A mark must be viewed in its entirety and in context. It is the overall impression that counts. *B. H. Bunn Co. v.*

*AAA Replacement Parts Co.*, 451 F.2d at 1262 n. 2; Restatement of Torts § 729, Comment b (1938).

Part of this "overall impression" includes the manner in which a particular mark or designation is to be used. Callmann, *supra* note 5, § 82.2(e). In this case, the Court attached significance to the fact that Armstrong would use its corporate name on its carpet labels and that this would likely cause confusion with World. Therefore, a comparison of World's carpet label and Armstrong's proposed carpet label [9] seems appropriate:

---

**9.** With the exception of the new corporate name, the proposed label is identical to the label currently used by Armstrong. Although Armstrong is not bound to use this proposed label on its carpets, there is nothing, other than speculation, to suggest that it will not be used. Indeed, the only evidence on this point suggests that Armstrong will use its new corporate name in the same manner that it uses its present name. *See e. g.,* Testimony of Armstrong Pres. Binns ("[Armstrong World Industries, Inc.'s] use, I would think would be the same kind of use that we have made of Armstrong Cork Company.").

# WORLD° CARPETS

**MORNING DEW**     STYLE 75

PILE:    100% NYLON

COLOR:                    WIDTH:    12 FT.

An exceptional styling featuring the rich, saxony texture so in demand today. This lush nylon pile is highlighted by decorative colors in solids and tweeds and is constructed for a unique beauty that is also practical.

Minimum care and maintenance will give you an elegant floor that will enhance your home for years to come.

Backings:    Fiber-Bac primary and jute secondary.

World's carpet label.

## Seclusion

PALMETTO
506-5994.

**Pile**
100% polyester

**Color**
Palmetto (506-5994)

**Width**
12' only

**Backings**
Available as Quality No 506 with
jute secondary backing only.

Color note:
Different dye lots are subject
to color variation.

**100% Armstrong approved polyester
fiber** provides softness, rich texture, and
excellent resistance to abrasion.

**Two-level cut-and-loop sculptured plush
construction** produces a subtle design
with a distinctive textural dimension,
making Seclusion an ideal carpet for
living rooms, dining rooms, and bedrooms.

**Autoclave heat-set yarn** improves tip
retention under traffic and keeps the
carpet new looking longer.

**Bright-luster yarn** adds to the beauty of
the carpet by keeping the colors
bright and fresh.

SA 1253 10 76J — Made in the United States of America by Armstrong World Industries Inc Lancaster Pa 17604

---

Armstrong's proposed carpet label.

An examination of Armstrong's proposed label shows that the diminutive appearance of the word *World*—in fine print at the bottom right of the label—is obviously quite different from the appearance of World's bold WORLD. The attention-getting feature in Armstrong's label is unquestionably Armstrong's own trademark—Armstrong with a circled *A*. The import of each label is altogether distinctive. With such clearly dissimilar labels, we fail to see how the ordinary purchaser of carpets would likely be confused between the two companies' products.[10] Cf. *Robinson Co. v. Plastics Research & Development Corp.*, W.D.Ark., 1967, 264 F.Supp. 852, 861.[11]

10. This is particularly so since a person buying a "big ticket" item such as carpeting would ordinarily be expected to be a more careful buyer than the impulse purchaser or the purchaser of a relatively inexpensive item. *See* Callmann, *supra* note 5, § 81.2(a), at 584–88.

11. In *Robinson*, the Court held that the use of the term *Rebel* on defendant's minnow plugs did not infringe plaintiff's trademark rights in REB–L lures. The Court found no *substantial* similarity of marks, in large part because the marks were displayed in distinguishable manners:

Moreover, it must be emphasized that Armstrong seeks merely to change its corporate name. There is no showing that Armstrong is seeking to feature either the new name in its entirety or, more significantly, the term *World* to denominate or advertise its carpets. There is nothing in the record that suggests that Armstrong will deviate from its present policy of promoting its own admittedly well-known and distinctive trademark.[12] Under such circumstances, we believe that the District Court was clearly erroneous in finding that Armstrong's proposed corporate name is substantially similar to World's trademark.

Once the Court's finding of similarity of marks is rejected, the other factors supporting the Court's determination appear insignificant. The only other factors cited by the Court in its findings were the similarities in the companies' business operations and products. These findings, standing without the critical finding of trademark similarity, are hardly sufficient to support a determination of likelihood of confusion.

Indeed, much other evidence at trial seems to support a contrary finding. For example, the existence of eighty-five different carpet companies using without objection from World the word *World* in their business—not to mention World's toleration of Armstrong's own use of the terms *INDOOR WORLD* and *Pacific World*—militates against the finding of likelihood of confusion.[13] Restatement of Torts § 729, Comment (g), at 596 (1938) ("The greater the number of identical or more or less similar trade-marks already in use . . . the less is the likelihood of confusion.").

World, however, contends that there is evidence showing not merely likelihood of confusion, but even actual confusion. First, World points to commentary in a trade magazine that purportedly suggests that Armstrong might have acquired World. This information came into the record via Armstrong's answer to World's interrogatory.[14] The commentary itself was properly excluded as hearsay. We find this evidence to be practically useless. From the interrogatory, it is of course impossible to know exactly what was written in the trade magazine. It is also impossible to determine whether the author of the comments was

---

The examples of Robinson's trademark which were introduced in evidence show that the mark is printed in either black or green ink on a white background with the printed words being the most outstanding feature of the whole trademark. Plastics Research's mark is quite distinguishable in that it consists of black lettering on a brightly colored (red, white and blue) circular field, with its most outstanding features being, not the printed words or the term "Rebel," but a representation of a Confederate flag along with a caricature of a fish wearing what appears to be a Confederate soldier's cap. 264 F.Supp. at 861.

12. Admitting as typical Armstrong's exhibits showing prominent use of the Armstrong mark, World further admitted that "in the past, in print, the name Armstrong frequently appeared in larger size type than the remainder of the corporate name and that the corporate name has been accompanied by prominent references to Armstrong, per se." Statements of Armstrong officials indicate nothing other than an intention to maintain this policy:

The name we use is Armstrong in all of our advertising, and everything. That is it. The small corporate identification is primarily for legal corporate use. That would become the corporate name, but the one word Armstrong is what we have used, and that is all we would—that is what we would continue to concentrate on. . . .

Deposition of Harry Jensen, Exec. Vice Pres., Armstrong Cork Co.

13. World tries to distinguish between the use of *World* by retailers as opposed to manufacturers. Insofar as consumers are concerned, the distinction seems tenuous. On at least one prior occasion, World apparently shared this view. See *World Carpets, Inc. v. Dick Littrell's New World Carpets*, 5 Cir., 1971, 438 F.2d 482.

14. The interrogatory, introduced into evidence at trial, reads as follows:

Please state whether Plaintiff Corporation is aware of any instance where the name Armstrong World Industries Inc. has generated oral or written comment in the soft floor covering industry or its trade journals or by customers of that industry as to whether the plaintiff and the defendant have merged or have, in some way, become affiliated with each other.

The answer, "Floorcovering Weekly, Exhibit 4."

actually confused, merely speculating, or attempting to be humorous about whatever it was he or she was writing about.

World also cites the testimony of two businessmen who stated that upon first learning of Armstrong's proposed name change they entertained short-lived impressions that Armstrong had acquired or merged with World.[15] To the extent that this evidence shows confusion at all, it is insufficient to tip the scales in World's favor. The fact that there might have been some evidence to support a particular finding does not make that finding impervious to F.R.Civ.P. 52(a) reversal if the reviewing court is convinced that a mistake has nonetheless been made. *W. R. B. Corp. v. Geer*, 313 F.2d at 752; *Sanders v. Leech*, 5 Cir., 1946, 158 F.2d 486, 487.

### V. Conclusion

■ Our evaluation of the evidence adduced at trial convinces us that the District Court was clearly erroneous in its finding of similarity of marks and that without this

finding there was no evidence from which one could reasonably find that Armstrong's adoption of the name Armstrong World Industries, Inc. would create a likelihood of confusion with World Carpets, Inc., its products, or whatever. Hence, there is no trademark infringement.[16]

We reverse in part and affirm in part, upholding only that portion of the District Court opinion denying World monetary damages and relief under state law.

**REVERSED IN PART; AFFIRMED IN PART.**

---

15. The first of these businessmen to testify, Patrick Shaw, currently World's Director of Marketing, responded to questioning by counsel for World:

    Q: [P]lease limit yourself to your first impression that you formed when you first heard of the proposed name change of Armstrong Cork Company . . . .
    A: That the two firms might possibly have merged. But, again, realizing that the Armstrong philosophy of selling carpet and where they were at in the market place, that it could not exist.

    The second businessman, Truett Lomax, Director of Administration of the Carpet & Rug Institute, Dalton, Georgia, testified that his first impression upon learning of the name change was that Armstrong had acquired World, but he added on cross-examination that he learned relatively quickly that it was "just a rumor."

16. We caution that our holding is a narrow one. We merely hold that Armstrong may change its corporate name to Armstrong World Industries, Inc. without infringing upon

World's trademark rights. Our holding does not give Armstrong carte blanche to use its new name in such a manner that it infringes upon World's rights. Therefore, to this extent, the District Court's Finding of Fact No. 28 is misleading ("Armstrong . . . would not be restricted, by law or self-control, to any particular use, alone or in combination, of either 'Armstrong' or 'World'."). Should Armstrong in future use its new name in such a manner that it infringes upon World's trademark rights, World will of course be free at that time to seek redress. In addition, although there is no evidence now to support a finding of common law unfair competition, should Armstrong subsequently attempt to "palm off" its products as those of World, such a cause of action might lie. For discussion of the law of unfair competition in this Circuit, see *Kentucky Fried Chicken Corp. v. Diversified Packaging Corp.*, 549 F.2d at 381–86; *Boston Professional Hockey Ass'n v. Dallas Cap & Emblem Mfg., Inc.*, 5 Cir., 1975, 510 F.2d 1004, 1010; *B. H. Bunn Co. v. AAA Replacement Parts Co.*, 451 F.2d at 1262–67.