SUN–FUN PRODUCTS, INC.,
Plaintiff-Appellant,

v.

SUNTAN RESEARCH & DEVELOPMENT INC., Defendant-Appellee.

No. 79–2719.

United States Court of Appeals,
Fifth Circuit.
Unit B

Sept. 17, 1981.

187

Stern & Wells, P. A., Sylvan A. Wells, Daytona Beach, Fla., for plaintiff-appellant.

Peter L. Niles, Daytona Beach, Fla., for defendant-appellee.

Before GODBOLD, Chief Judge, TUTTLE and HILL, Circuit Judges.

GODBOLD, Chief Judge:

Plaintiff Sun-Fun Products appeals from directed verdicts for defendant Suntan Research and Development (SRD) in a suit for trademark infringement and unfair competition under the Lanham Act, 15 U.S.C. § 1051 et seq. The district court directed a verdict on the trademark claim at the close of plaintiff's evidence and on the unfair competition claim at the close of defendant's evidence. We reverse on both claims.

Sun-Fun is a manufacturer of suntan preparations. Since the company's inception in the mid-1960's its products have borne a trademark composed of the brand name "Native Tan" and a sunburst symbol surrounding a figure resembling the head of a tiki god.[1] Headquartered in Daytona Beach, Florida, Sun-Fun sells Native Tan products throughout the United States and has spent over $2,000,000 promoting its products and its logo through a variety of advertising and promotional techniques.

SRD also produces suntan preparations and is located in Daytona Beach. Since 1970 its founder and president, David Hampton, has operated a lifeguard service through which he sold suntan products at various pool decks in Florida and elsewhere. In the early 1970's Hampton purchased from other manufacturers the suntan preparations sold at these pool decks, including substantial quantities of Native Tan products. Around 1975 he decided to produce his own suntan products and formed SRD.

He chose as a logo the brand name "Beach Buff" and a sunburst surrounding a couple clad in swimsuits.[2] Thereafter Hampton sold only Beach Buff products at the pool decks. A small percentage of Beach Buff products was also sold through retail outlets. After this suit was filed SRD modified the Beach Buff logo and substantially changed the appearance of the bottles used for its product.[3]

Sun-Fun sued SRD for trademark infringement and unfair competition, and a jury trial was held. In addition to evidence about the development of the Native Tan mark and numerous exhibits of both Native Tan and Beach Buff products, Sun-Fun presented the testimony of Douglas Weisburg, a former employee of both parties to this suit. Weisburg testified that after working for Sun-Fun for six years he accepted a job with SRD in 1974 or 1975. Hampton was then in the process of developing logo and packaging for his new products. Weisburg stated that Hampton instructed him to design a package for the product as similar as possible to that of Native Tan. According to Weisburg's testimony, he (Weisburg) subsequently designed the original Beach Buff bottles with a bottle of Native Tan on the table in front of him. He also testified that Hampton designed the Beach Buff logo and ignored his complaints that the sunburst too closely resembled Native Tan's sunburst.

At the close of Sun-Fun's evidence the district judge directed a verdict for SRD on the trademark claim. Relying on *Armstrong Cork Co. v. World Carpets, Inc.*, 597 F.2d 496 (5th Cir.), *cert. denied*, 444 U.S. 932, 100 S.Ct. 277, 62 L.Ed.2d 190 (1979), he ruled that the two trademarks were so dissimilar that there was no likelihood of confusion. Defendant then presented evidence

---

1. The mark was not registered in the U.S. Patent Office until 1973. For a pictorial representation of the mark, see p. 190, *infra.*

2. For a pictorial representation of the "Beach Buff" logo, see p. 190, *infra.*

3. Many of the exhibits offered by SRD at trial were samples of the redesigned product. However, since the redesigned product did not appear on the market until about the time of suit and Sun-Fun's evidence is directed toward the original Beach Buff logo and bottles, our analysis is limited to a comparison of the Native Tan mark and bottles and the original Beach Buff mark and bottles.

to rebut the remaining unfair competition claim, including the testimony of Hampton, which directly conflicted with that of Weisburg. At the close of defendant's evidence the district judge directed a verdict for defendant on that claim as well. He concluded that there was no likelihood of confusion in the trade dress of the two products because Beach Buff was sold primarily at pool decks where it was the only suntan preparation displayed, thus precluding any side-by-side comparison of the two products.

■ Our standard of review of the directed verdicts on both claims is clear. A motion for a directed verdict shall be granted only when, viewing the evidence as a whole and all inferences therefrom in the light most favorable to the party opposing the motion, the district court determines that a reasonable jury could not reach a contrary verdict. *Walker v. Tenneco Oil Co.*, 615 F.2d 1121, 1123 (5th Cir. 1980).

### Trademark Infringement

■ The governing standard in trademark infringement actions is "likelihood of confusion." 15 U.S.C. § 1114; *Exxon Corp. v. Texas Motor Exchange of Houston*, 628 F.2d 500, 504 (5th Cir. 1980). Whether two marks are likely to be confused depends upon an amalgam of factors. Among these factors are "the type of trademark, the similarity of design, the similarity of the product, the identity of retail outlets and purchasers, the similarity of advertising media used, defendant's intent, and actual confusion." *Exxon*, 628 F.2d at 504. Other factors include previous contractual or business relations between the parties, 3 R. Callman, The Law of Unfair Competition Trademarks and Monopolies § 82.2(b)(3) (3d ed. 1969), and the degree of care purchasers are likely to exercise when selecting products of the type sold by the parties, *Armstrong Cork*, 597 F.2d at 504 n.10; Restatement Torts § 729 (1938).

■ The district court's directed verdict was based upon only one of these factors, similarity of design. The district judge appears to have reasoned that the marks were so dissimilar in appearance that the other extrinsic factors were irrelevant. We disagree. The two marks must bear some threshold resemblance in order to trigger inquiry into extrinsic factors, but this threshold is considerably lower than the degree of similarity required where the plaintiff presents little or no evidence on extrinsic factors supporting infringement. This court routinely has evaluated factors other than degree of similarity in cases where the marks were found to be quite similar, *e. g., Exxon, supra,* and in cases where the marks were found to be distinguishable, *e. g., Armstrong Cork, supra; Amstar Corp. v. Domino's Pizza, Inc.,* 615 F.2d 252 (5th Cir.), *cert. denied,* 449 U.S. 899, 101 S.Ct. 268, 66 L.Ed.2d 129 (1980). Evaluation of these other factors is necessary because it is difficult to assess degree of similarity in a vacuum:

> In assessing the likelihood of deception occasioned by the use of the trademark in question, all the surrounding circumstances should be scrupulously explored. The fact that the litigating trademarks appear side by side in the judicial solemnity of the courtroom is by itself enough of a falsification of actual market conditions to defy realistic appraisal. Judges, therefore, must attempt to pierce this patently unreal situation and refer to the operative facts behind the scene. Equally as significant as the general appearance of the trademarks is their use in the public market, their effect upon dealers, purchasers and other competitors, the relationship of the trademark's owners, *e. g.,* whether they meet with competing articles in competing markets, how they develop their business, and whether they are acting *bona* or *mala fide.*

Callman, § 82.2.

■ The threshold level of similarity required to trigger inquiry into the other factors was satisfied here. Our analysis begins with the well-established proposition that similarity of design stems from the overall impression conveyed by the mark and not a dissection of individual features, *Exxon, supra; Armstrong Cork, supra.* A comparison of Sun-Fun's mark and SRD's mark reveals articulable similarity.

Sun-Fun's Mark

SRD's Mark

Both marks are composed of a brand name centered over a sunburst that surrounds a figure. Although one might expect that the mark of a producer of suntan preparation might feature prominently a depiction of the sun, the sunbursts in these two marks are strikingly similar and differ significantly from any other sunburst mark in evidence. Each resembles a corona and encircles a sun-associated figure. Moreover, each consists of a nearly identical pattern of irregular fingers of flame. The similarity of these sunbursts, coupled with the similar format of the two logos, creates a sufficient impression of similarity to require submission of the similarity issue to the jury.

There are, of course, identifiable differences between the marks: the brand names above the sunbursts and the figures within them are unalike. A jury might well conclude that the marks are too dissimilar to justify a finding of infringement. We merely hold that it was improper for the district judge to weigh these similarities and differences instead of the jury.[4]

Our conclusion is bolstered by the evidence Sun-Fun presented in support of extrinsic factors that are relevant to a determination of trademark infringement. The linchpin of Sun-Fun's case was Weisburg's testimony that he had been instructed to copy the Native Tan bottle. Evidence of intentional deception carries special weight in the calculus of determining likelihood of confusion. Indeed, proof that a defendant chose a mark with the intent of copying plaintiff's mark, standing alone, may justify an inference of confusing similarity, *Exxon*, 628 F.2d at 506; *Amstar Corp.*, 615 F.2d at 263. Weisburg's testimony, coupled with the articulable similarity of the marks described above, raises a jury question.

Analysis of Sun-Fun's evidence regarding other extrinsic factors lends further support to our decision. With respect to the

4. The facts regarding similarity of design in *Armstrong Cork*, relied upon by the district court in directing a verdict for SRD, are readily distinguishable. The labels at issue in that

strength of trademark,[5] the evidence indicates that Sun-Fun's "Native Tan" trademark was registered and that it had appeared on plaintiff's products for at least seven or eight years before defendant placed Beach Buff on the market. It also shows that the plaintiff has spent substantial sums of money promoting the Native Tan trademark through national media advertising, brochures, and various other promotional techniques.

■ The similarity of the two products is uncontested. Native Tan and Beach Buff are suntan preparations sold to the public in parallel product lines of oils and lotions designed to meet the needs of people with different tanning characteristics. On the other hand, the evidence with respect to identity of retail outlets and purchasers is mixed. The two products appeal to the same customers—people who might loosely be termed "sun-worshippers." However, the retail outlets through which they are distributed are different. Beach Buff is sold largely from Hampton's poolside stands that do not offer competing suntan preparations. Native Tan is sold primarily through traditional commercial retail outlets. Before Beach Buff entered the market Native Tan was also sold at poolside stands owned by Hampton. This past supplier-distributor relationship between Sun-Fun and Hampton is also probative evidence of likelihood of confusion. See Frito-Lay, Inc. v. So Good Potato Chip Co., 540 F.2d 927 (8th Cir. 1976); Callman, § 82.-2(b)(3).

Sun-Fun and SRD use many of the same advertising and promotional techniques. The only major difference is that Native Tan's advertising is much broader in scope. Sun-Fun has placed Native Tan advertisements in magazines with national circulation and has sponsored race cars under that logo.

■ Sun-Fun did not present any evidence of actual confusion.[6] However, such evidence is not a prerequisite for a finding of likelihood of confusion, Exxon, 628 F.2d at 506; Roto-Rooter Corp. v. O'Neal, 513 F.2d 44, 45 (5th Cir. 1975).

Finally, since suntan preparations are relatively inexpensive items the buyer may take less care in shopping and selecting the product, thereby increasing the risk of confusion, see Armstrong Cork, 597 F.2d at 504

case were totally dissimilar. The only shared attribute was that the word "World" was part of the corporate name of both parties. The possessor of the allegedly infringed mark used "World" prominently on its labels whereas the alleged infringer used the word only in fine print at the bottom of its labels. Moreover, the alleged infringer possessed a strong trademark of its own in which the word did not appear. See 597 F.2d at 502–05. Likewise this court's recent decision in Sun Banks v. Sun Federal Savings & Loan, 651 F.2d 311 (5th Cir. 1981), is distinguishable. In Sun Banks the panel reversed the district court's finding of likelihood of confusion because, inter alia, the only similarity between the two marks was the use of the word "Sun" and the orange color of the logos, id. at 317.

**5.** Neither the parties nor the district court made any effort to determine what type of trademark Native Tan may be. Marks usually fall into one of four categories: arbitrary marks, descriptive marks, suggestive marks and generic terms, see Sun Banks v. Sun Federal Savings & Loan, 651 F.2d 311 at 315 (5th Cir. 1981). We will not assume the role of a jury and categorize the mark based upon our visual impression. It is sufficient for purposes of directed verdict review to observe that the Native Tan mark arguably has many of the indicia of a suggestive mark and is therefore entitled to protection. See id.; Soweco, Inc. v. Shell Oil Co., 617 F.2d 1178, 1184 (5th Cir. 1980), cert. denied, 450 U.S. 981, 101 S.Ct. 1516, 67 L.Ed.2d 816 (1981).

**6.** During trial, counsel for both parties spent considerable time eliciting witnesses' opinions concerning the likelihood of confusion between the marks. Such evidence has little, if any, probative value, see Singer Manufacturing Co. v. June Manufacturing Co., 163 U.S. 169, 178, 16 S.Ct. 1002, 1005, 41 L.Ed. 118, 122 (1896); Callman, supra, § 82.3(c).

n.10. This factor also points in plaintiff's favor and against a directed verdict.

### Unfair Competition

■ Sun-Fun bases its unfair competition claim on 15 U.S.C. § 1125.[7] The central inquiry here is "whether the defendant is passing off his goods or services as those of the plaintiff by virtue of substantial similarity between the two, leading to confusion on the part of potential customers." *Boston Professional Hockey Association v. Dallas Cap & Emblem Mfg., Inc.,* 510 F.2d 1004, 1010 (5th Cir.), *cert. denied,* 423 U.S. 868, 96 S.Ct. 132, 46 L.Ed.2d 98 (1975). The factors relevant to this inquiry are essentially the same as those relevant in determining trademark infringement, but the scope of inquiry into similarity of design is considerably broader, *see id.* The touchstone under § 1125 is not similarity of the registered mark but similarity in the overall trade dress of the products, *see* Callman, § 82.-1(h).

Although the district judge considered the trade dress of the two products "somewhat similar,"[8] he nevertheless directed a verdict based upon the different retail outlets used by the parties. He reasoned that the likelihood of confusion was low because the two products rarely if ever appeared side by side on retail shelves.

■ We find this an inadequate basis for a directed verdict. As with the directed verdict on infringement, the district court placed undue weight on but one of the several factors that relate to unfair competition. Moreover, the inference drawn by the district court with respect to different retail outlets is far from ineluctable. Indeed, since Native Tan and Beach Buff are sold to the same general class of consumers and Beach Buff is sold from poolside stands that once sold Native Tan, the inability to compare the products side by side and observe the precise differences in appearance may increase the likelihood of confusion. When making a decision to purchase the consumer must rely on memory rather than a visual comparison. Callman, § 81.1 at 573.

We need not reiterate Sun-Fun's evidence with regard to the other extrinsic factors that are relevant to both trademark infringement and unfair competition. We hold that sufficient evidence was presented to create a jury issue on both claims. Accordingly, the judgment below must be reversed.[9]

REVERSED.

---

7. SRD argues that plaintiff's amended complaint alleged only trademark infringement and *did not allege a broader unfair competition claim.* Even assuming that plaintiff's complaint cannot be read liberally to state such a claim, the argument is foreclosed by the parties' pretrial stipulation approved by the district court in its pretrial order. The stipulation specifically states that among the issues to be litigated at trial are similarity of the bottles, packaging, the wording of the information on the bottles, and the color patterns of the bottle. Record at 169–71. Plaintiff submitted exhibits and other evidence on these issues during its case in chief and defendant failed to object. At the close of plaintiff's evidence the district judge concluded that the evidence supported a claim of unfair competition. Defendant's counsel *expressed surprise that such a claim was before the court.* However, defendant's agreement to the stipulation and failure to object to evidence or the issues contained therein is an implied consent to an amendment to conform to the evidence under Fed.R.Civ.P. 15(b). *See Wansor v. George Hantscho Co.,* 570 F.2d 1202, 1208 (5th Cir.), *cert. denied,* 439 U.S. 953, 99

S.Ct. 350, 58 L.Ed.2d 344 (1978); *Wallin v. Fuller,* 476 F.2d 1204 (5th Cir. 1973).

8. Our review of the evidence and exhibits indicates that the district judge's characterization of the similarity of trade dress was overly parsimonious in light of the directed verdict standard. In addition to the similar size, color, and shape of Native Tan and Beach Buff bottles, the color patterns of print on the bottles are virtually identical on a line by line basis. Furthermore, the wording on the back of some of the bottles is quite similar.

9. Sun-Fun also argues as a ground for reversal that the district court improperly limited cross-examination of Hampton. We comment only because the matter might arise again at retrial. During direct, defendant's counsel asked Hampton if he had ever engaged in "trickery in [his] business." On cross, the district court sustained objection to plaintiff counsel's asking Hampton what he meant by "trickery in [his] business." The short answer is that, if objected to, the original question should not be permitted.