CUES, INC., Plaintiff,

v.

POLYMER INDUSTRIES, INC., and Alan B. Grant, Defendants.

Civ. A. No. 1–86–cv–1430–RHH.

United States District Court,
N.D. Georgia,
Atlanta Division.

Jan. 26, 1988.

John S. Pratt, Kilpatrick & Cody, Atlanta, Ga., Ira C. Edell, Robert H. Epstein, Epstein & Edell, Rockville, Md., Kieth V. Rockey, McDougall, Hersh & Scott, Chicago, Ill., Robert N. Levin, Levin & Associates, Washington, D.C., for plaintiff.

Jerome J. Froelich, David H. Pope, Carr Tabb & Pope, Atlanta, Ga., for defendants.

## ORDER

ROBERT H. HALL, District Judge.

Plaintiff brings this action alleging patent and trademark infringement and unfair

competition. Plaintiff seeks injunctive relief and damages. This court's jurisdiction is predicated upon 28 U.S.C. §§ 1332 and 1338 and 15 U.S.C. § 1121. The action is currently before the court on plaintiff's motion: (1) for partial summary judgment on the issue of liability; (2) for a permanent injunction enjoining defendants from allegedly further infringing on plaintiff's patents and trademarks and ordering a full accounting by defendants; (3) for a show cause hearing why defendant Grant and non-party, Charles Boyle, should not be held in contempt of court for allegedly disobeying discovery orders and a subpoena; and (4) for an award of attorneys' fees in the amount of $145,346.59.

## FACTS

Plaintiff, Cues, Inc., is engaged in the business of manufacturing, selling and leasing equipment and providing consulting services related to testing sewer pipes for leaks and sealing leaks in such pipes. Plaintiff's Statement of Material Facts as to Which No Genuine Dispute Exists, ¶ 2 ("Plaintiff's Facts"). Defendant, Alan B. Grant ("Grant"), is the president of defendant Polymer Industries ("Polymer"). At all times relevant to this action, defendant Polymer was also engaged in the business of manufacturing and selling devices for testing and sealing leaks in sewer pipes.

Polymer also engaged in the business of repairing and refurbishing similar "used" equipment. At times, Polymer repaired such equipment for customers who had bought it used and desired continued use of the equipment. At other times, Polymer itself bought the equipment used, refurbished it and then sold it as used and reconditioned. *See* Defendants' Answers to Plaintiff's First Set of Interrogatories ("Defendants' Answers"); Affidavit of Alan B. Grant ("Grant Affidavit"); and Deposition of Robert M. McGrew, pp. 18–25 ("McGrew Depo.").

Plaintiff is the owner of the federally registered trademark "Posatryn" used in conjunction with pressure sensing units for use in testing sewer lines. Plaintiff's Facts, ¶ 6; Exhibit 12 to Plaintiff's Brief in Support of its Motions. Plaintiff is also the owner of two United States patents numbered 3,750,711 ("711 patent") and 3,618,-639 ("639 patent"). Plaintiff's Facts, ¶ 7; Exhibits 10 and 11 to Plaintiff's Brief in Support of its Motions. The 711 patent covers a method and apparatus for testing of leaks in pipes and the 639 patent covers a packer for sealing pipe leaks. The packer is one component of the apparatus covered by the 711 patent. The 711 patent apparatus also includes a variety of fluid and grout lines, a television camera, and a pressure gauge and transducer.

Plaintiff contends that defendants infringed plaintiff's trademark by using the term "Posatryn" in a Polymer price and parts list. Plaintiff also alleges that defendants infringed both the 711 and 639 patents by selling and/or either building or remanufacturing packers and complete apparatuses for use in testing and sealing leaks in sewer pipes. Plaintiff seeks to have defendants adjudged liable for the infringements and required to make a full accounting in regard to the alleged infringing activities and enjoined from further infringing the patents and trademarks. Plaintiff also moves this court to conduct a show cause hearing why defendant Grant and non-party Charles Boyle should not be held in contempt. Plaintiff contends Grant failed to comply with this court's discovery orders and prevented Boyle from complying with a subpoena duces tecum. Plaintiff also seeks an award of attorneys' fees.

## DISCUSSION

### I. *Motion for Partial Summary Judgment*

#### A. *Trademark Infringement*

A person shall be liable for trademark infringement if, without the consent of the registrant, he or she

(a) use[s] in commerce any reproduction ... of a registered mark in connection with the sale [or] offering for sale ... any goods ... in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive; or

(b) reproduces ... a registered mark and appl[ies] such reproduction ... to labels, signs, prints, packages, wrappers, recep-

tacles or advertisements intended to be used in commerce upon or in connection with the sale [or] offering for sale ... goods ... in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive.

15 U.S.C. § 1114(1). If one is accused of violating subsection (b), the registrant may not recover against the alleged infringer unless the latter committed the infringing acts "with knowledge that such imitation is intended to be used to cause confusion, or to cause mistake, or to deceive." *Id.*

Although plaintiff in the instant action alleges defendants infringed its trademark, "Posatryn," neither its complaint nor its brief in support of its motion for partial summary judgment makes it clear whether defendants are accused of violating subsection (a) or (b) or both. The only allegedly infringing activity of which plaintiff complains in its summary judgment brief is defendants' publication of a parts and price list bearing the term "Posatryn." Such conduct might represent infringement in violation of subsection (b), in which case plaintiff must show that defendants, with knowledge and an intent to confuse, used plaintiff's trademark. Such conduct might also reflect a violation of subsection (a) as implied in plaintiff's complaint in which it alleges defendants infringed plaintiff's trademark by using the registered mark in connection with the sale of goods.

Although evidence exists to support a finding that defendants had no knowledge that "Posatryn" was plaintiff's registered mark and thus did not intend by using it to deceive or confuse,[1] an inquiry into defendants' intent does not appear to be material if plaintiff alleges defendants violated subsection (a) of 15 U.S.C. § 1114(1). Regardless of whether plaintiff alleges defendants

violated subsection (a) or (b) or both, however, "[t]he central inquiry in a service-mark [trademark] infringement case is whether there is a 'likelihood of confusion' on the part of the consumers between the names and symbols used by the two parties." *Freedom Savings and Loan Association v. Way,* 757 F.2d 1176, 1179 (11th Cir.1985), *cert. denied,* 474 U.S. 845, 106 S.Ct. 134, 88 L.Ed.2d 110 (1985). *See also Armstrong Cork Co. v. World Carpets, Inc.,* 597 F.2d 496, 500 (5th Cir.1979), *cert. denied,* 444 U.S. 932, 100 S.Ct. 277, 62 L.Ed.2d 190 (1979). Plaintiff bears the burden of proving both the validity of its trademark and the likelihood of confusion, mistake or deception caused by defendants alleged reproduction, counterfeit, copy or colorable imitation of plaintiff's mark. *Aloe Creme Laboratories, Inc. v. Estee Lauder, Inc.,* 533 F.2d 256, 257 (5th Cir. 1976).

The controlling question of whether defendants' use of plaintiff's mark is likely to cause confusion, mistake or to deceive is one of fact. *See Id.; Armstrong Cork, supra.* Plaintiff need not show actual confusion on the part of consumers and the Eleventh Circuit has set forth seven factors the factfinder should consider in determining whether there is a likelihood of confusion.[2] In the instant action, plaintiff failed to address the issue of likelihood of confusion, mistake or deception. Plaintiff merely asserts that defendants used its trademark and that they did so willfully, intentionally and knowingly. The issue of defendants' intent and knowledge, however, is in dispute and, without even a discussion of the likelihood of confusion, the core issue in a trademark infringement action, plaintiff is not entitled to summary judgment in its favor.[3] Therefore, the

---

**1.** Robert McGrew, once an employee of Polymer, stated that he did not know the term "Posatryn" was a trademark belonging to Cues. McGrew Depo. p. 23. Another past employee of Polymer, Michael Hogan, testified that Polymer used the term "Posatryn" until it was notified it could no longer be used, at which point Polymer changed its price list to delete every reference to "Posatryn." Hogan Depo. p. 10.

**2.** Those factors are: type of trademark at issue; similarity of design; similarity of services; identity of purchasers and similarity of retail outlets; similarity of advertising campaigns; the defendant's intent; and actual confusion. *Freedom Savings & Loan, supra,* 757 F.2d at 1182.

**3.** Plaintiff must show not only that there is no genuine issue as to any material fact but also that it is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c).

384

court DENIES plaintiff's motion for partial summary judgment with regard to its claim of trademark infringement.

## B. *Patent Infringement*

A person shall be liable for patent infringement if he or she, without authority, "makes, uses or sells any patented invention, within the United States during the term of the patent...." 35 U.S.C. § 271(a). A person shall be liable as a contributory infringer if he or she

> sells a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use.

35 U.S.C. § 271(c). Plaintiff contends defendants infringed both the 639 and 711 patents and are liable as contributory infringers with regard to the 711 patent.

## 1. *The 711 Patent*

In support of its allegation that defendants either directly or contributorily infringed the 711 patent, plaintiff offered the affidavits of Walter Huber and Robert Cecil. Both attest to the fact that Polymer sold to two companies (Lemac Sales and Service Co. and S.O.S. Service Group, Inc.) systems for testing and sealing leaks in pipes whose components directly corresponded to the parts which make up the apparatus covered by the 711 patent. In addition, Robert McGrew conceded that he became aware of Cues' 711 patent and discussed it with Grant, who also knew of the existence of the 711 patent, but that Polymer continued after that time to manufacture a system for testing and sealing leaks

in pipes which was virtually identical to the Cues system. McGrew Depo. pp. 23–25, 42–43.

▆▆▆ In their answers to Plaintiff's First Set of Interrogatories, defendants admit that "Polymer has bult [sic] and sold a number of TV seal units" to purchasers including Lemac Sales and SOS Service Group. Thus, defendants appear to admit to infringing plaintiff's 711 patent in violation of 35 U.S.C. § 271(a) and (c). In response to plaintiff's motion for partial summary judgment, however, defendant Grant submitted an affidavit in which he states that the units Polymer sold to Lemac and SOS, among others, differ from the systems described in the 711 patent.[4] Grant asserts that Polymer sold "quadline" systems and that the 711 patent describes only "triline" systems.

Defendants' attempt to distinguish between the triline and quadline systems must fail as a matter of patent law. The 711 patent sets forth "comprising" rather than "consisting" claims. Claim One of the 711 patent recites: "an apparatus for determining whether a leak exists in a pipe line in combination with a packer for sealing said leak remotely, *comprising* in combination ..." a packer, two fluid lines and one grout line. (emphasis supplied) A quadline system is made up of two chemical lines and two air lines.

▆▆▆ In patent law, the word "comprising" is "open-ended ..., one of enlargement and not of restriction; in contrast, the word 'consisting' is one of restriction and exclusion." Deller's Walker on Patents, Vol 4, § 241, p. 114 (2d. ed 1965). The United States Court of Customs and Patent Appeals held, on at least two occasions, that a "comprising-type count" "by definition, does not exclude the presence of other steps, elements or materials." *Reese v.*

---

**4.** Plaintiff argues that the Grant Affidavit should be stricken because it is allegedly inconsistent with Grant's answers to interrogatories previously given under oath and it allegedly makes no showing of Grants' competency to testify to the matters contained within it. The inconsistencies between the affidavit and answers to interrogatories lie more in a difference in se-

mantics than in substance. See discussion *infra*, Part I. B.2. In addition, in the affidavit Grant states that he has personal knowledge of the facts set forth in it and that he is of the age of majority and suffers from no legal disability. The court will not, therefore, strike the Grant affidavit.

*Hurst,* 661 F.2d 1222, 1229 (CCPA 1981) (*citing* P. Rosenberg, *Patent Law Fundamentals* 14–15 (1980)). *See also In re Fenton,* 451 F.2d 640, 642 (CCPA 1971) (because the claims were "comprising" claims, even those which did not recite presence of oxygen in the reaction medium were open to an interpretation that oxygen was the oxidant).

Under settled patent law, plaintiff's "comprising" claim in the 711 patent must be interpreted as including, or at least not excluding the presence of a fourth line (a second air line). Therefore, defendants' manufacture and sale of quadline systems for testing and sealing leaks in pipes infringed plaintiff's 711 patent. Because the parties do not dispute that defendants had knowledge of Cues' 711 patent and that Polymer built and sold systems covered by the 711 patent (including quadline systems), the court GRANTS plaintiff's motion for partial summary judgment with regard to the 711 patent. The court ENJOINS defendants from manufacturing or selling any triline or quadline systems that would infringe plaintiff's 711 patent.

### 2. *The 639 Patent*

Plaintiff's 639 patent describes a packer apparatus used for the internal sealing of pipe leaks which is made up of components including a pair of casings covered with inflatable skins. In their answers to plaintiff's interrogatories, defendants stated that Polymer purchased used packers and refurbished them. Robert McGrew stated in his deposition that Polymer would obtain packers and remanufacture or refurbish them. Grant states in his affidavit that Polymer repaired and reconditioned used packers and sold them as reconditioned equipment.

Plaintiff argues that defendants "remanufactured" patented items, including the packers described in the 639 patent, and thereby infringed its patents. Plaintiff cites two Supreme Court cases to support its contention that defendants infringed the 639 patent by "remanufacturing" packers. In *Aro Manufacturing Co. v. Convertible Top Replacement Co.,* 365 U.S. 336, 81 S.Ct. 599, 5 L.Ed.2d 592, *reh'g denied,* 365 U.S. 890, 81 S.Ct. 1024, 6 L.Ed.2d 201 (1961), the Supreme Court set forth the distinction between permissible repair and forbidden reconstruction. The Court concluded that impermissible "reconstruction of a patented entity, comprised of unpatented elements, is limited to such true reconstruction of the entity as to 'in fact make a new article' [cit] after the entity, viewed as a whole, has become spent." *Id.* at 346, 81 S.Ct. at 604.[5] The Court in *Aro* held that replacement of the fabric used in a convertible top did not infringe the combination patent covering the entire convertible top.

In a later case, the Supreme Court considered whether a second-hand purchaser of fish canning machines infringed the patent when it cleaned, sandblasted and resized the machines which were corroded, rusted and inoperative when purchased. In *Wilbur–Ellis Co. v. Kuther,* 377 U.S. 422, 84 S.Ct. 1561, 12 L.Ed.2d 419 (1964), the Supreme Court held that the resizing and adaptation of the machines did not infringe the patent. The Court found that the machines were not spent, although they needed cleaning and repair, and that "in adopting the old machines to a related use [petitioners did] more than repair in the customary sense; but what they did was kin to repair for it bore on the useful capacity of the old combination, on which the royalty had been paid." *Id.* at 424–425, 84 S.Ct. at 1563.

In attempting to apply the repair-reconstruction distinction, lower courts have found that replacement of even a majority of the parts of a patented device does not constitute infringement of the patent. In *TSC Industries, Inc. v. International Harvester Co.,* 406 F.2d 53 (7th Cir.1968) the Seventh Circuit reversed the trial court finding of impermissible reconstruction and found no patent infringement where the

---

**5.** Plaintiff also cited *Aro Manufacturing Co. v. Convertible Top Replacement Co.,* 377 U.S. 476, 84 S.Ct. 1526, 12 L.Ed.2d 457 (196A) ("Aro II") to support its argument. That case, however, is inapposite to the instant action and sheds no further light on the repair-reconstruction distinction.

alleged infringer substantially rebuilt a non-spent patented item. In that case the plaintiff (who did not hold the patent) purchased worn out patented devices ("doffers") for a nominal sum and then destroyed what was left of the patented doffer combination, saving only a reusable metal plate, and then rebuilt them. Plaintiff in *TSC Industries* did not take the worn doffer to be repaired and thereafter return it to the original owner. Instead, the *TSC Industries* plaintiff performed a type of production line method of rebuilding (using spare pieces from a large selection of worn out doffers purchased in the open market).

In *Dana Corporation v. American Precision Co.*, 618 F.Supp. 288 (C.D.Ill.1985), *aff'd*, 827 F.2d 755 (1987), the court held that there was no patent infringement where defendants rebuilt plaintiff's patented clutches by replacing key parts of the patented device. The court held that "even if Century [defendant] replaced *all* of the so-called key parts with new non-Dana parts, no 'second creation' of the patented combination would occur. Accordingly, Century does not engage in reconstruction simply by using new key parts in rebuilding...." *Id.* at 294 (emphasis in original). The *Dana* court also found that the production line method of rebuilding did not transform permissible repair into infringing reconstruction. *Id.*

■ In the instant case, defendants and some past employees described their activities with regard to packers interchangeably as "remanufacturing" or "rebuilding" or "refurbishing." Plaintiff seeks to have this court enter summary judgment against defendants on the basis of their "admission" in their answers to interrogatories and McGrew's statements in his deposition that Polymer "remanufactured" packers, thereby infringing the 639

patent. The dispute is one of semantics. The "remanufacturing" or "refurbishing" of which defendants speak may more closely approximate the "rebuilding" which other courts found did not infringe the patents. A question of fact remains whether defendants rebuilt (i.e., reconditioned and repaired) or reconstructed used packers described in the 639 patent. Therefore the court DENIES plaintiff's motion for partial summary judgment with regard to the 639 patent.[6]

## II. *Motion for Show Cause Hearing on Contempt*

■ Plaintiff seeks to have this court find defendant Grant in contempt of court for his failure to obey the court's December 4, 1986 discovery order. Defendant Grant, who was at the time proceeding *pro se*, did respond to plaintiff's First Set of Interrogatories as ordered by this court. Although his answers were approximately three days late (Grant received an extension from this court to respond until January 9, 1987), and not presented in the most proper form, this court will not adjudge Grant in contempt for such failings.

Plaintiff also requests this court to hold a hearing for defendant Grant and a non-party, Charles Boyle, to show cause why they should not be held in contempt for failing to comply with a subpoena *duces tecum*. Boyle is the controller of Gredig Industries, allegedly a corporation owned by defendant Grant. Pursuant to a subpoena *duces tecum* Boyle was ordered to appear at a deposition and to bring several corporate documents. Boyle failed to produce any of the documents required by the subpoena. Initially Boyle stated that he had no control over the documents and that defendant Grant denied him permission to bring the documents. Boyle Depo., p. 13–14. Boyle later admitted that, as control-

---

**6.** In the Polymer Industries brochure describing the services of Polymer, "remanufacturing" is described as the ability to "exchange or rebuild existing worn components ..." thus "reconditioning your present equipment." This activity seems somewhat analogous to the rebuilding which the courts in *TSC Industries* and *Dana Corp., supra,* found did not constitute infringing activity. Insofar as defendants "remanufac-

tured" or "reconditioned" or "rebuilt" systems described in the 711 patent, the court also denies plaintiff's motion for partial summary judgment for the reasons given above. The court grants plaintiff's motion for partial summary judgment on the 711 patent insofar as defendants built and sold systems covered by the patent.

ler, he does have access to and control over a variety of records sought in the subpoena, although he suggested that such control only exists so long as the documents remain in the office.

■ If Boyle is engaged in the management, direction and control of Gredig Industries' affairs, he may share responsibility for assuring compliance with the subpoena. *United States v. Greyhound Corporation,* 363 F.Supp. 525, 570 (N.D.Ill.1973), *aff'd,* 508 F.2d 529 (1974). In order to find civil contempt it is not necessary to show that the alleged contemnor wilfully or intentionally violated the subpoena. *Quinter v. Volkswagen of America,* 676 F.2d 969, 973 (3rd Cir.1982). Furthermore, it is not a defense to civil contempt that one received erroneous advice from counsel or a superior. *Farber v. Rizzo,* 363 F.Supp. 386, 395 (E.D.Pa.1973). If defendant Grant instructed Boyle to disobey the subpoena, he also may be held in contempt. Although Grant was not himself directed to comply with the subpoena, he may be found in contempt of the court if he had actual knowledge of it and either abetted Boyle or is legally identified with him. *Quinter, supra,* 676 F.2d at 973.

Therefore, it appearing that Charles Boyle, at the direction of defendant Grant, failed to obey a subpoena, the court DIRECTS both Grant and Boyle to appear at a hearing to show cause why they should not be held in contempt of the court. The hearing shall be held on Tuesday, February 16, 1988 at 9:15 a.m.

III. *Attorneys' Fees*

■ Plaintiff seeks attorneys' fees in the amount of $145,346.59 for litigating the action to date. Plaintiff contends this is an "exceptional case" within the meaning of 35 U.S.C. § 285 and 15 U.S.C. § 1117 thus warranting an award of attorneys' fees. Plaintiff also argues that it is entitled to an award of attorneys' fees pursuant to Georgia law, Ga.Off'l Code Ann. § 13–6–11 (1982). The court declines to reach the question of whether this is an exceptional case or whether defendants have acted in bad faith because plaintiff did not fully prevail on its motion for partial summary judgment. Although the court does find

that defendants infringed plaintiff's 711 patent insofar as it built and sold systems covered by the patent (including quadline systems), the court does not find that defendants, as a matter of law, infringed plaintiff's trademark or the 639 patent. Plaintiff would only be entitled to attorneys' fees if it were a prevailing party *and* this were an exceptional case under the patent and trademark laws. Therefore, the court DENIES plaintiff's motion for attorneys' fees.

CONCLUSION

The court PARTIALLY GRANTS and PARTIALLY DENIES plaintiff's motion for partial summary judgment. The court DENIES the motion with regard to trademark infringement and infringement of the 639 patent. The court GRANTS the motion with regard to infringement of the 711 patent and the court DIRECTS defendants to make a full accounting with regard to the infringing activities (manufacture and sale of 711–type systems, including quadline systems). The court DENIES plaintiff's motion for attorneys' fees. The court DIRECTS defendant Grant and non-party Charles Boyle to appear at a hearing on Tuesday, February 16, 1988 at 9:15 a.m., to show cause why they should not be held in contempt of court for failing to obey a subpoena *duces tecum.*