DOW JONES & COMPANY,
INC., Plaintiff,

v.

BOARD OF TRADE OF the CITY OF
CHICAGO, Defendant.

No. 82 Civ. 2023 (RLC).

United States District Court,
S. D. New York.

July 16, 1982.

---

Patterson, Belknap, Webb & Tyler, New York City, for plaintiff; Robert D. Sack, Thomas C. Morrison, Robert P. LoBue, Donald A. Baer, New York City, of counsel.

Kirkland & Ellis, Chicago, Ill., Townley & Updike, New York City, for defendant; James M. Amend, Robert G. Krupka, Donald W. Rupert, Chicago, Ill., John P. Reiner, New York City, of counsel.

## OPINION

ROBERT L. CARTER, District Judge.

Dow Jones & Company, Inc. ("Dow") moves for a preliminary injunction pending final determination of its copyright in-

fringement action against the Board of Trade of the City of Chicago (the "Board").[1] Dow seeks a five-part order, 1) preventing the Board from issuing or publishing, in its own rulebook or in communications to its members or to the Commodity Futures Trading Commission ("CFTC"), any copy of Dow's stock market indexes; 2) prohibiting "de facto" publication of such material through mere amending of previously published copies; 3) forcing the Board to turn over to Dow all existing copies of infringing materials; 4) directing the Board to obtain and return all such materials disseminated to its members, the CFTC or the general public; and 5) restraining the Board from trading its stock market futures contracts until all infringing materials have been delivered to Dow. *See* Tr. at 214–16.[2]

In order to obtain preliminary relief, a plaintiff must establish possible irreparable harm and either the probability of success on the merits or sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in its favor. *Dallas Cowboys Cheerleaders, Inc. v. Pussycat Cinema, Ltd.*, 604 F.2d 200, 206 (2d Cir. 1979); *Jacobson & Co., Inc. v. Armstrong Cork Co.*, 548 F.2d 438, 441 (2d Cir. 1977).

For Dow to meet any of these requirements it must establish that its lists of component stocks are copyrightable.[3] To this fundamental question the court will first turn its attention. Although this issue was discussed at some length in the June 22 opinion, the court concluded only that defendant did not deserve summary judgment based upon non-copyrightability. At the present stage of the proceedings, the bur-

den shifts to plaintiff to show the likelihood of establishing at trial the copyrightability of its lists.

As noted in the June 22 opinion, the court's difficult task involves classifying Dow's lists of component stocks as either "compilations" or "mere listing[s] of ingredients or contents." The former category, which includes catalogs and directories, receives copyright protection, *see Miller v. Universal City Studios, Inc.*, 650 F.2d 1365, 1370 (5th Cir. 1981), while the latter falls without the scope of the statute. 37 C.F.R. § 202.1(a). The court has found no prior decisions or commentary dealing with the choice between these two contradictory classifications.

The cases reveal two separate but interrelated justifications for granting copyright protection to compilations of factual materials. Some directories are considered original works because of the labor expended in their preparation. *See, e.g., Schroeder v. William Morrow & Company*, 566 F.2d 3, 5 (7th Cir. 1977) (list of suppliers of gardening materials); *Southwestern Bell Telephone Company v. Nationwide Independent Directory Service, Inc.*, 371 F.Supp. 900, 905 (W.D.Ark.1974) (telephone directory). Other compilations, however, are protected because the author exercised subjective judgment and selectivity in choosing items to list. *See, e.g., Adventures In Good Eating, Inc. v. Best Places To Eat, Inc.*, 131 F.2d 809, 812–13 (7th Cir. 1942) (compilation of choice restaurants); *List Publishing Co. v. Keller*, 30 F. 772 (C.C.S.D.N.Y. 1887) (social register).

---

1. Pursuant to the court's opinion of June 22, 1982, all claims other than the copyright claim have been dismissed. A discussion of the grounds for dismissal need not be repeated herein. Familiarity with the prior opinion will be presumed herein. It should be noted, however, that nothing in the order of the Illinois Appellate Court, *Board of Trade of the City of Chicago v. Dow Jones and Company*, No. 82–1378 (Ill. App. Ct. July 6, 1982), reversing the judgment of the Circuit Court of Cook County bears upon the *res judicata* issues decided by this court.

2. References to Tr. relate to the transcript of the evidentiary hearing held on June 22–24 upon Dow's motion for a preliminary injunction. Dow apparently has amended this request and reasserted its demand for an injunction barring all trading of the Board's proposed contracts.

3. Clearly, there can be no chance of success on a copyright claim unless the work in question is copyrightable. Nor can there be irreparable *copyright* harm in the absence of copyrightability.

Lists of contents or ingredients are not subject to copyright protection because they are "forms of expression dictated solely by functional considerations." *Nimmer on Copyright* § 2.01[B] (1981) at 2–14 (hereinafter "Nimmer"). The "ingredients or contents" language has been cited in cases denying protection to lists of ingredients on the labels of food products. *See Kitchens of Sara Lee, Inc. v. Nifty Foods Corporation*, 266 F.2d 541, 544 (2d Cir. 1959); *Gary v. Eskimo Pie Corporation*, 244 F.Supp. 785, 788 (D.Del.1965). Copyrightable writings "do not include labels which simply designate or describe the articles to which they are attached and which have no value separate from the articles, and no possible influence upon 'science and useful arts.'" Nimmer, *supra*, § 208[G][2] at 2–117.

Dow's lists of component stocks have qualities comparable both to compilations and to ingredients. Like the former, Dow's lists evidence a high degree of selectivity and subjective judgment. Dow chose an arbitrary number of components for each of its indexes, decided to select blue-chip stocks representing a variety of business endeavors and has continuously monitored and revised the lists in response to changing economic circumstances. Dow's presentation of its lists in *The Wall Street Journal*, on the other hand, has the physical appearance of a mere display of ingredients. In a box entitled "The Dow Jones Averages [High, Close, Low]" Dow publishes tables showing the previous week's daily changes in the Averages and providing other numerical information about stock transactions. The lower right-hand corner of this box, an area comprising approximately ⅙ of the total space used, lists the stocks making up each of the three specific Averages under the heading "Dow Jones 65 Components." This layout resembles the food package labels involved in the ingredient cases.

Dow's lists thus share with compilations one characteristic responsible for their copyright protection, the subjective judgment and selectivity involved in determining which members of a given population merit inclusion in the author's list. Despite the formalistic similarity between the presentation of the component stocks and that of a list of ingredients, such *substantive* comparability is not apparent. Rather, Dow has presented uncontradicted evidence tending to show that its lists are not solely functional and are thus missing the element essential to ingredients.[4] It appears that various academics and financial analysts are interested in the component stocks' validity as mirrors of market movement and as reflectors of the nation's industrial history. Tr. at 95, 150. No such interest is generated by the fact that a packaged cheesecake does or does not contain sugar. Due to the effort and judgment exercised in their composition, and the non-functional purposes to which they are put, Dow's lists are copyrightable.[5]

---

4. The Board asserts that the ingredients classification is proper where a list includes no information other than the names of included items. While many of the protected compilations involved in prior cases conveyed such additional information, *see, e.g., Adventures In Good Eating, Inc., supra*, 131 F.2d at 811 (restaurant guide included prices, specialties, etc.), copyrightable status did not depend upon the amount of data communicated. The selective judgment resulting in copyright protection is present whether or not prices are listed along with chosen restaurants or addresses are listed along with the names of socially acceptable persons. Even a bare list conveys the author's subjective determinations of merit.

5. A copyrightable portion of a copyrighted magazine or newspaper is protected against infringement. *Triangle Publications, Inc. v.*

*Knight-Ridder Newspapers, Inc.*, 626 F.2d 1171, 1173, 1177 n.15 (5th Cir. 1980); *Inter-City Press, Inc. v. Siegfried*, 172 F.Supp. 37, 40 (W.D. Mo. 1958) ("Notice of copyright, when adequately given on a periodical, ... suffices to protect all copyrightable material contained therein"); 17 U.S.C. § 404(a) ("a single notice applicable to the collective work as a whole is sufficient ... with respect to the separate contributions it contains").

The Board claims that Dow has lost its right to protection through public dissemination of the lists in uncopyrighted brochures and by acquiescing to widespread·publication by unauthorized third parties. When a work has been injected into the public domain, all of its copyright protection is lost permanently. *Jacobs v. Robitaille*, 406 F.Supp. 1145, 1149 (D. N.H. 1976); *H.W. Wilson Company v. National Library Service Co.*, 402 F.Supp. 456, 458 (S.D.

The precise scope of the protected work and the alleged infringements must be defined before the appropriateness of preliminary relief is explored further. Much time has been spent in the course of this litigation debating the potential effects upon Dow, its Averages and its publications of trading stock index futures contracts based on the Averages. As will be described in more detail below, most of this discussion is irrelevant to the issues before the court. Dow concedes that its copyright claim involves only its lists of component stocks, and not its Averages or its publications. The trading process itself will not involve any reproduction of Dow's lists, Tr. at 388–90, nor is the copying necessary for trading to proceed, *id.* at 412–4, so any harm caused Dow by such trading is not cognizable in this copyright action. Therefore, the discussion to follow will focus on the 2,000 or so copies of Dow's lists generated by the Board and whether those copies infringe Dow's copyright.

■ As a general rule in copyright cases, "allegations of irreparable injury need not be very detailed, because normally such injury can be presumed when copyright is infringed." *Wainwright Securities, Inc. v. Wall Street Transcript Corporation,* 558 F.2d 91, 94 (2d Cir. 1977), *cert. denied,* 434 U.S. 1014, 98 S.Ct. 730, 54 L.Ed.2d 759 (1978); *Novelty Textile Mills, Inc. v. Joan Fabrics Corporation,* 558 F.2d 1090, 1094 (2d Cir. 1977). Entitlement to preliminary relief in copyright cases follows from a demonstration of probable success on the merits. *Russ Berrie & Company, Inc. v. Jerry Elsner Co., Inc.,* 482 F.Supp. 980, 982 n. 2 (S.D.N.Y. 1980) (Haight, J.); *Encyclopaedia Britannica Educational Corporation v. Crooks,* 447 F.Supp. 243, 247 (W.D.N.Y. 1978). Probable success on the merits is established when plaintiff presents a *prima facie* case of infringement, *i.e.,* when plaintiff's exclusive use of the copyrighted material is invaded. *See Encyclopaedia Britannica Educational Corporation, supra,* 447 F.Supp. at 247.

A copyright defendant may rebut the presumption of irreparable harm. When, for example, the works in issue are not in active competition with each other, "the court may require some showing of possible irreparable injury." *Life Music, Inc. v. Wonderland Music Company,* 241 F.Supp. 653, 656–57 (S.D.N.Y. 1965) (Feinberg, J.); *see Wainwright Securities, Inc., supra,* 558 F.2d at 94 (the presumption of irreparable harm is valid where a competitor's publication "'may materially reduce the demand for [plaintiff's] services'"). Because there is no direct competition between Dow and the Board, Dow may not rely exclusively on evidence going to the issue of infringement. The predominance of the probable success inquiry in copyright cases, however, suggests that that branch of the standard should receive primary attention. *See Russ Berrie & Company, Inc., supra* at 982 n. 2

N.Y. 1975) (Owen, J.) ("Publishing a book without copyright notice puts the work in the public domain"). Such a "forfeiture" of copyright protection applies only to the specific work published without notice. *National Comics Publications, Inc. v. Fawcett Publications, Inc.,* 191 F.2d 594, 598 (2d Cir. 1951). To "abandon" such rights to all *future* works, the owner must perform "some overt act which manifests his purpose to surrender." *Id.* at 598–9. Barring abandonment, future copyrighted works are protected despite being substantially similar to previously forfeited works. *Id.* at 599–60.

Of the three lists of specific components which currently constitute the Averages, only the Utility list has been published in an uncopyrighted brochure. Outdated versions of the other lists also were published, but all dissemination of the current components of these lists has borne notice of copyright. By distributing lists of stocks in the past, Dow did not manifest an intent to surrender its rights to all subsequent lists. The fact that subsequent brochures were copyrighted is an indication that Dow lacked the requisite intent to abandon. Only the specific permutations published in unprotected pamphlets are in the public domain. Since the lists have meaning only when viewed in their entirety, no purpose would be served by determining whether Dow forfeited copyright protection for the transportation and industrial stocks contained in the previously published lists. Furthermore, the Board has not established Dow's acquiescence in the face of a great volume of infringements. *Compare Stuff v. E.C. Publications, Inc.,* 342 F.2d 143, 144–45 (2d Cir.), *cert. denied,* 382 U.S. 822, 86 S.Ct. 50, 15 L.Ed.2d 68 (1965).

("as the likelihood of success diminishes, the *need* for preliminary relief must be correspondingly high") (emphasis in original); *Mattel, Inc. v. S. Rosenberg Co., Inc.*, 296 F.Supp. 1024, 1026–27 (S.D.N.Y. 1968) (Frankel, J.) (to merit preliminary relief, a copyright plaintiff must show a "strong likelihood" or "high probability" of success on the merits).

The court holds that the Board copied Dow's copyrighted lists in its submissions to the CFTC and for placement in its own rulebook. There is no dispute that the copy incorporated in the rulebook has been distributed to the Board's 2,052 members and approximately 50 staff persons. The Board, however, offers three theories to impugn the persuasiveness of Dow's position on the merits. Analogizing the lists to instructions for the use of a product, the Board argues that since there is no other way to express the "rules" for calculating the Averages, the Board's use does not constitute infringement.[6] Next, the Board asserts that its Subscription Agreement with Dow licenses it to copy the lists in the manner described above. Finally, the Board invokes the doctrine of "fair use" to shield it from copyright liability.

Instruction sheets and rulebooks receive limited copyright protection from infringement, but the rationale for such special treatment has not been articulated clearly. *See* Nimmer, *supra,* § 2.18[A]–[D] at 2–195—2–207 (review and analysis of the relevant decisions). Professor Nimmer concludes that works whose function is primarily utilitarian are infringed when "defendant has copied copyrightable elements" contained therein. *Id.* at § 2.18[D], 2–207. Thus, where more than one form of expression may convey the underlying idea, word-for-word duplication of instructions should constitute infringement. *But see Morrissey v. Procter & Gamble Company,* 379 F.2d 675, 678–9 (1st Cir. 1967) (where uncopyrightable subject matter may be described only in a limited number of ways, no one set of rules is copyrightable).

The "copyrightable elements" approach has received implicit acceptance in this circuit. A copyright protecting the "arrangement" and "manner of . . . presentation" of rules for a game was not infringed by defendant's rulebook for an identical game because the latter work was not copied verbatim from the former. *Affiliated Hospital Products, Inc. v. Merdel Game Manufacturing Company,* 513 F.2d 1183, 1188–89 (2d Cir. 1975); *see also Decorative Aides Corp., Inc. v. Staple Sewing Aides Corp.,* 497 F.Supp. 154, 158 (S.D.N.Y. 1980) (Carter, J.), *aff'd,* 657 F.2d 262 (2d Cir. 1981). Given the limited protection granted utilitarian works, and the simplicity of the idea expressed in plaintiff's rules, slavish mimicking of the protected arrangement would be required to support a finding of infringement. *Affiliated Hospital Products, Inc., supra,* 513 F.2d at 1188; *Decorative Aides Corp., Inc., supra,* 497 F.Supp. at 158.

Unlike the instruction sheets at issue in the cases described above, Dow's lists derive their copyrightability from the selective judgment employed in choosing their constituent stocks. The Board has copied this "copyrightable element" in its entirety. Forbidding copying of this element will not insulate the underlying idea that monitoring 30 blue-chip stocks might provide a valuable, continuous indicator of stock market performance. Only the expression of that idea, embodied in the particular stocks selected by Dow, is protected from slavish copying. Because the Board copied the protectable aspect of Dow's work, the rulebook cases do not rebut Dow's infringement claim.

Two paragraphs in the Subscription Agreement allegedly license the Board to use Dow's lists as they have. The Agreement reads as follows:

"Unless separately and specifically licensed to do so by you in writing, we agree that we will not redistribute the NEWS SERVICE to or through any oth-

---

**6.** The Board employs this "rules" analysis in its treatment of the copyrightability issue. In this circuit, however, the fact that a protected work is an instruction effects the infringement issue, *see infra,* and the Board's argument will be treated pursuant to the preferred approach.

er organization within 24 hours of its receipt by us. . . .

We understand that the NEWS SERVICE means any and all items carried by the NEWS SERVICE, including the Dow Jones stock and bond averages (no matter from what source these averages may be received) as well as all press association news items originally received by us on the NEWS SERVICE."

The Board argues that this language permits redistribution of News Service information subject only to the 24 hour limitation. Dow suggests that the referenced language *restricts* the rights of subscribers by preventing them from conveying the substance of the information received within the first 24 hours after publication. In no way, Dow asserts, does the Agreement license copyright violations after that time.

The existence of the Agreement makes it less likely that Dow will succeed on the merits, but leaves Dow with a fairly litigable issue. Dow cannot rest on some generic notion of subscription relationships after drafting ambiguous language indicating that these parties expanded the traditional rights of subscribers. Certain of the exhibits show, moreover, that Dow intended some classes of subscribers to copy and redistribute portions of the News Service so long as the third-party receiver would not impair Dow's monopoly on timely dissemination. There remains a litigable issue, however, because the evidence indicates that the parties may have intended to accomplish only the limited results suggested by Dow.

The likelihood of Dow's succeeding on the merits also is reduced by the Board's "fair use" defense. The copying of protected work "for purposes such as criticism, comment, news reporting, teaching, . . . scholarship, or research, is not an infringement of copyright." 17 U.S.C. § 107. Four factors must be considered in determining whether use of a copyrighted work is "fair": "(1) the purpose and character of the use, . . .; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the effect of the use upon the potential market for or value of the copyrighted work." [7] *Id.* These factors will be discussed seriatim, following a brief general discussion of the fair use doctrine.

The fair use doctrine serves to balance the author's right in his creation with the public's interest "in dissemination of information of universal concern." *Meeropol v. Nizer,* 560 F.2d 1061, 1068 (2d Cir. 1977), *cert. denied,* 434 U.S. 1013, 98 S.Ct. 727, 54 L.Ed.2d 756 (1978); *Encyclopaedia Britannica Educational Corporation, supra,* 447 F.Supp. at 249. A second author may not copy something to make the intrinsic, ordinary use out of it, but may copy for so-called "productive use." *Universal City Studios, Inc. v. Sony Corporation of America,* 659 F.2d 963, 970 (9th Cir. 1981), *cert. granted,* —— U.S. ——, 102 S.Ct. 2926, 73 L.Ed.2d 1328 (1982). An illustrative, but not exclusive, list of productive uses is found in the first sentence of 17 U.S.C. § 107. *Id.*

The first factor articulated in the statute, the purpose and character of the use, responds to the rationale for the fair use doctrine described above. Dow and the Board bitterly contest the motive underlying the Board's use of the lists. Dow insists that the Board's goal is to trade on the reputation and integrity of Dow. The Board counters that the only reason for the copying was to describe to the CFTC which stocks would compose its proposed futures contracts.

Dow's allegations fail to respond to the question at hand. It is inconceivable that the Board copied Dow's lists for communication to the CFTC and to Board members

7. These four factors do not constitute a rigid formula, but rather a guide to aid in determining when the principles of fair use apply. *Universal City Studios, Inc. v. Sony Corporation of America,* 659 F.2d 963, 969 (9th Cir. 1981), *cert.* granted, —— U.S. ——, 102 S.Ct. 2926, 73 L.Ed.2d 1328 (1982). The factors must be molded or expanded to fit the particular circumstances of a given case.

in order to appropriate Dow's goodwill. While the *trading* of futures contracts based upon the *Averages* might be designed to enrich the Board at Dow's expense, the only *copyright* violation alleged involves the reproduction and limited distribution of the lists of component stocks. Such use of protected material apparently was motivated as the Board claims.

The court is convinced that inclusion of the lists in the Board's application to the CFTC was not mandated. Rather, the Board could have stated that its proposed stock market index would track the Averages at all times. This finding makes it clear that copying the lists did not itself serve a commercial purpose. The Board's commercial intentions, whether legitimate or not, will be furthered only by trading on contracts based upon the Averages. On the other hand, insofar as it was unnecessary, the Board's copying did not serve a purpose cognizable under the fair use doctrine. The fact that the use involved does not further traditionally accepted purposes such as criticism, research or education "clearly weighs against a finding of fair use" despite the non-commercial motive behind the use. *Universal City Studios, Inc., supra*, 659 F.2d at 972 & n. 9.

■ The nature of the copyrighted work seems to be the least important and most unclear of the four factors enumerated in § 107. *See id.* at 972. Because copyright protection for compilations of factual material cannot be reconciled with the general principles of the copyright laws, *see Miller v. Universal City Studios, Inc., supra*, 650 F.2d at 1370, such works should be most conducive to fair use. Authors of compilations, therefore, must be held to grant broader licenses for subsequent use than persons whose work is truly creative. *See New York Times Company v. Roxbury Data Interface, Inc.*, 434 F.Supp. 217, 221 (D.N.J. 1977); *Public Affairs Associates, Inc. v. Rickover*, 268 F.Supp. 444, 450 (D.D.C. 1967).

■ The nature of Dow's lists, moreover, strengthens the Board's position regarding the purpose and the substantiality of its use. *See Meeropol, supra*, 560 F.2d at 1069 (all four factors "must be evaluated in concert"). The lists can be used, either for calculating the Averages or for economic commentary, only as complete units. No group of component stocks short of the entire list for each particular index has any independent value. Therefore, if there is *any* possible fair use of the lists, that use must entail literal reproduction.· This characteristic renders the lists unique even within the field of compilations and justifies a departure from the general rule that exact copies cannot constitute fair use. *See New York Times Company, supra*, 434 F.Supp. at 221–3 (while appropriation of expression is usually prohibited, "the court also must consider the extent to which defendant's index requires the copying of the names from" plaintiff's work).

The court now must determine "the amount and substantiality of the portion used in relation to the copyrighted work as a a whole." 17 U.S.C. § 107(3) (1976). Copying a portion of a newspaper or news service is appreciably less substantial than reproducing an entire copyrighted work. *Encyclopaedia Britannica Educational Corporation, supra*, 447 F.Supp. at 251. *But see* 3 Nimmer, *supra*, § 13.03[A][1] at 13–29 ("If the segment ... [copied] in defendant's works is a copyrightable portion of a collective work then" testing substantiality in relation to plaintiff's entire work may not be appropriate). Viewed as a portion of the *Wall Street Journal* or the News Service, Dow's lists are not substantial. While Dow asserts in its legal memoranda that the "Dow Jones *Averages* ... are ... matters [of] substantial interest to Dow Jones' audience," it concedes that the *compilations* are of interest primarily to small, special groups, Reply Memorandum of Law at 50, and admits that the lists of component stocks are no longer published in the News Service because they were "viewed as a waste of valuable space." Sack affidavit ¶ 3. Even if the lists are deemed independent copyrighted works, it would make no sense, given the unique factual circumstances involved, to adopt the notion that

copying an entire work can never be fair use. *See Triangle Publications, Inc. v. Knight-Ridder Newspapers, Inc.*, 626 F.2d 1171, 1177 & n. 15 (5th Cir. 1980).

An overview of the three factors discussed to this point indicates that the Board may well be able to satisfy its burden to prove its use fair. While the purpose of the copying was neither antithetical to nor consistent with the traditional fair uses, the nature of the copyrighted work and the insubstantiality of the portion copied support the applicability of the defense to the case at bar. In any event, the most important factor remains to be considered. *See Triangle Publications, Inc., supra*, 626 F.2d at 1177; *Meeropol, supra*, 560 F.2d at 1070 ("A key issue in fair use cases is whether the defendant's work tends to diminish or prejudice the potential sale of plaintiff's work"); 3 Nimmer, *supra*, § 13.05[A][4] at 13–61—13–62 (the effect on potential market value is "the central fair use factor"). Furthermore, the analysis of the market effects on Dow's product caused by the Board's publication will shed light on the irreparable harm and balancing of hardships inquiries.

Dow has failed to demonstrate how the Board's dissemination of approximately 2,000 copies of the component stock lists tends to prejudice the potential sale of Dow's copyrighted works. In its most recent memorandum, Dow asserts that the evidence shows that the Board's copying will have a disastrous effect on the potential market for the licensing of the compilations, and on the integrity of the lists as well. Nothing in the record, however, indicates that the lists have any value. They have never been sold or licensed as independent units. Rather, their contents are disclosed without charge via brochures and telephone, and they are included in various Dow publications for sale. Evidence that various entities, including the Board, have offered large sums for permission to trade futures contracts based on Dow's Averages is not probative as to the lists themselves.[8] No credible evidence has been received on the question of potential impairment of the value of the *Wall Street Journal* or the News Service from the copying of Dow's lists.[9]

After developing a substantial record through both live testimony and voluminous exhibits, deposition transcripts and chronicles of the action in Illinois, the court is in a peculiarly good position to rule upon the non-existence of market impact. *See Encyclopaedia Britannica Educational Corporation, supra*, 447 F.Supp. at 251. The court is guided further by the presumption that use of a compilation by a noncompetitor will not injure the potential market for the copyrighted material. *New York Times Company, supra*, 434 F.Supp. at 223 (citing cases and commentary). Dow's inability to offer any "logical link" between the copying of its lists and "the alleged harm to the copyright" increases significantly the likelihood that the Board will establish the fair use defense and, correspondingly, decreases the probability that Dow will succeed on the merits. *See Triangle Publications, Inc.,*

**8.** None of the evidence concerning offers to purchase the right to trade futures contracts based on the Averages focused on the lists. *See, e.g.*, Tr. at 296. At most, the testimony indicates that several exchanges were willing to pay to trade instruments based on the Averages. Since the Averages are not protected under the copyright laws, such evidence merely substantiates the value of Dow's non-copyright, property rights. The court has no jurisdiction to consider the impairment of Dow's proprietary rights.

**9.** Dow claims that its involuntary association with the Board's trading activities will impair the news-gathering abilities of its publications and might affect sales adversely if the public loses faith in Dow's integrity. While injury of these types is plausible, though not probable, it does not derive from the copyright violation alleged. No purchaser of Dow's products will question the evenhandedness of Dow's treatment of commodities news because a commodities exchange copied the lists of component stocks 2,000 times. If Dow's impartiality is impugned and its sales decreased, it will result not from this alleged copyright infringement but from the trading of the Board's futures contracts. Once again it must be emphasized that such trading does not involve copyright violations and, to the extent it infringes Dow's other proprietary rights, those rights are not before the court.

*supra,* 626 F.2d at 1177 & n. 16 (no effect on the potential market of plaintiff's copyrighted magazine could be found as a result of defendant's copying of the magazine cover in its own advertisements).[10] In light of the Board's strong defenses, grounded in the Subscription Agreement and the fair use doctrine, Dow cannot establish the probability of success on the merits. Because these issues are fairly litigable, however, Dow may be entitled to preliminary relief if it shows possible irreparable harm and a balance of hardships tipping decidedly in its favor.

Some showing of possible irreparable harm is necessary because the works in issue are not direct competitors. *Life Music, Inc., supra,* 241 F.Supp. at 656–7. Even this minimal burden has proven too formidable for Dow. None of the harm speculated by Dow, whether lost potential licensing of the Averages or impaired reputation, derives from the *copyright* infringement alleged. If any damage has been wrought by the Board's copying, and if that copying constitutes infringement, money damages, either actual or statutory, will adequately compensate Dow. *Id.* at 657 (where plaintiff's work had no apparent value, defendant's work did not compete with it and defendant possessed sufficient resources to satisfy any conceivable judgment, no injunction would issue); *see Klauber Brothers, Inc. v. Lady Marlene Brassiere Corp.,* 285 F.Supp. 806, 808 (S.D.N.Y. 1968) (Palmieri, J.) (injunction denied in a copyright case in which it appeared that damages would be an adequate remedy if plaintiff recovered and that defendant could respond to a money judgment). Dow's failure to show possible irreparable harm leads the court to conclude that the hardships do not tip decidedly in its favor. Trading can cause Dow no further copyright harm, but an injunction might impair the Board's ability to compete in the stock index futures market and cause economic injury to its members.

Finally, the court must register its surprise at the arguments made in Dow's post-hearing brief. During the hearing, counsel amended Dow's request for relief so as to correspond to the limited copyright question before the court. Tr. at 213–14; *see supra* at p. 1. Dow sought to prevent future copying of its lists and to impound existing copies, and asked that "the Board ... be restrained from trading in stock futures index contracts based on the Dow Jones Average *merely pending the compliance with*" the impounding aspects of the proposed order. *Id.* at 216 (emphasis added). By demanding an injunction against trading based upon injury to reputation, impaired news-gathering capabilities, inability to license use of the lists and potential liability to unsuccessful futures traders, Dow has greatly expanded the limited restraint on trading requested during the hearing. Counsel's in-court representations have become a "minimum" request. This opinion makes clear that this now-"minimum" request is the only one that corresponds to Dow's *copyright* claims, as Dow itself recognized at one point.

For the reasons set forth above, Dow's motion for a preliminary injunction is denied. Dow has shown neither the probability of success on the merits nor possible irreparable harm. Moreover, an injunction would cause greater hardship to the Board than Dow faces under the present state of affairs. Finally, it must be stressed that the court's findings that Dow will suffer no

**10.** Professor Nimmer proposes a functional test to determine whether defendant's work impairs the potential market for or value of plaintiff's work. Nimmer, *supra,* § 13.05[B] at 13–62. Under this standard, the fair use defense may be invoked if defendant's work "performs a different function than that of the plaintiff's." *Id.* at 13–63. While people interested in obtaining Dow's lists for purposes of commenting thereon could use the copies published by the Board, the two sources clearly were designed for different purposes and directed to different audiences. Furthermore, given the unique character of plaintiff's work, including the impossibility of using less than all of it, the instant case provides one of the "very limited situations wherein copying of even the entire work for a different functional purpose may be regarded as a fair use." *Id.* at 13–72.1—13–72.2. Application of the functional approach, therefore, does not increase Dow's likelihood of succeeding on the merits.

harm to its reputation, news-gathering abilities or pecuniary interests, and no potential liability to unsuccessful traders, relate *solely* to the alleged copyright infringement at issue. Whether the Board's use of Dow's Averages or the trading itself might cause such injuries, and whether they are actionable, are questions before the courts in Illinois. By copying the lists of component stocks and distributing them to a limited audience, the Board has caused Dow no irreparable harm and has probably not infringed Dow's copyright.

IT IS SO ORDERED.