**ROBARB, INCORPORATED, a Georgia corporation, Plaintiff,**

v.

**POOL BUILDERS SUPPLY OF THE CAROLINAS, INC., a North Carolina corporation, Pool Builders Supply of the Carolinas, Inc., a North Carolina corporation, d/b/a Crystal Clear Chemical and Olen E. Morgan, individually, Defendants.**

No. 1:87–CV–2102–HTW.

United States District Court,
N.D. Georgia,
Atlanta Division.

April 8, 1988.

Preliminary Injunction Order
April 29, 1988.

## MEMORANDUM OPINION

HORACE T. WARD, District Judge.

Plaintiff has manufactured and distributed a pool cleaner since 1976. The pool cleaner, which was the first one of its type to come onto the market, is currently marketed under the name "Super–Blue CC," the "Original Crystal Clear." It is colored dark blue and bottled in a clear plastic, cylindrical bottle with white lettering and a white cap.

Up until a year or two ago, other pool cleaners on the market used different colors for their liquid and/or opaque bottles. Recently, however, a few pool cleaner manufacturers have begun to color their product dark blue and bottle it in clear bottles with white printing and a white cap.

From 1976 until approximately June 1987 defendants were distributors of plaintiff's products. In June 1987 defendants began to sell a pool cleaner under the trade name "Super Aqua Clear." It was dark blue in color and bottled in a clear plastic, cylindrical bottle with white printing and a white cap. In July the defendants made small changes in the printing of their product's bottle and altered the logo. In late August or early September defendants altered the packaging for their product a second time, changing the name "Aqua Clear" to "Aqua Brite," and the manufacturer's name given on the bottle from "Crystal Clear Chemical Co." to "Crystal Brite Chemical Co."

Plaintiff claims in this action that defendants have infringed its trade dress, trademarks, and copyright. It also makes claims under the Georgia Uniform Deceptive Trade Practices Act, common law restrictions on unfair competition and infringement, and the Georgia anti-dilution statute. It moved for a preliminary injunction and a hearing was held at which evidence was presented concerning entry of a preliminary injunction. After consideration of the evidence presented and the proposed findings submitted by the parties, the court makes the following findings of fact and conclusions of law.

*Discussion*

In order to obtain a preliminary injunction, plaintiff must show that (1) there is a substantial likelihood that it will prevail on the merits at trial; (2) it will suffer irreparable harm if it is not granted injunctive relief; (3) the benefits the injunction will provide to it outweigh the harm it will cause defendants; and (4) issuance of the injunction will not harm public interests. *Callaway v. Block*, 763 F.2d 1283, 1287 (11th Cir.1985) (citation omitted).

### I. *Trade Dress*

■ Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)) creates a federal cause of action for trade dress infringement. *Ambrit, Inc. v. Kraft, Inc.*, 805 F.2d 974, 978 (11th Cir.1986) *republished at* 812 F.2d 1531 (11th Cir.1986), *cert. denied,* — U.S. ——, 107 S.Ct. 1983, 95 L.Ed.2d 822 (1987). " 'Trade Dress' involves the total image of a product and may include features such as size, shape, color or color combinations, texture, graphics, or even particular sales techniques." *John Harland Co. v. Clarke Checks, Inc.*, 711 F.2d 966, 980 (11th Cir. 1983). "[T]o prevail on a trade dress infringement claim under § 43(a), the plaintiff must prove three elements: 1) its trade dress is inherently distinctive or has acquired secondary meaning, 2) its trade dress is primarily non-functional, and 3) the defendant's trade dress is confusingly similar." *Ambrit*, 805 F.2d at 978.

### A. Inherent Distinctiveness or Secondary Meaning

■ As noted above, plaintiff has the burden of showing *either* that its trade dress is inherently distinctive *or* that it has acquired secondary meaning. *Id.* Among the factors which should be considered in determining whether a type of packaging is inherently distinctive are whether it is a common shape or design, whether it is unique or unusual in a particular field, and whether it is a mere refinement of a commonly adopted and well-known form of or-

namentation for a particular class of goods viewed by the public as a dress or ornamentation for that class of goods. *Brooks Shoe Manufacturing Co., Inc. v. Suave Shoe Corp.*, 716 F.2d 854, 857–58 (11th Cir.1983); *Seabrook Foods, Inc. v. Bar-Well Foods Ltd.*, 568 F.2d 1342, 1344 (C.C. P.A.1977).

■ Although, as defendants argue, the shape of the bottle Robarb uses is a common one, the combination of the transparent bottle, dark blue liquid, white cap, and the layout of the white printing conveys a distinctive visual impression. The overall appearance of Robarb's trade dress and of its constituent elements is arbitrary or suggestive rather than generic or descriptive. The trade dress, apart from a few descriptive passages in the printing, does not describe the pool cleaner; it, instead, simply suggests to the consumer the clear, blue water of a tropical ocean. "Such trade dress is inherently distinctive under Section 43(a)." *Ambrit*, 805 F.2d at 980; *cf. Id.* at 979–80; *Brooks*, 716 F.2d at 857–58; *Chevron Chemical Co. v. Voluntary Purchasing Groups, Inc.*, 659 F.2d 695, 702–03 (5th Cir. Unit A Oct. 1981) *cert. denied*, 457 U.S. 1126, 102 S.Ct. 2947, 73 L.Ed.2d 1342 (1982).[1]

The fact that some evidence was presented that other companies have bottled similar blue liquid pool cleaners in clear bottles with white printing does not prove that plaintiff's trade dress is not inherently distinctive. Most of the similarly dressed pool cleaners which were placed into evidence were obtained at a trade show. Although three companies other than plaintiff were actually selling blue pool cleaner in clear bottles with white printing, defendants failed to produce any evidence concerning the geographic area in which these were being distributed or the amount of sales. In addition, each of these three pool cleaners uses a markedly different format for the white printing on the bottle than do plaintiff and defendants. "Third party use of one or more suggestive or arbitrary

---

1. Although *Chevron*, as a new Fifth Circuit decision, is not binding authority, the Eleventh Circuit has stated that "it is entitled to great weight because it is based on cases of the former Fifth Circuit that are binding precedent in this circuit." *Ambrit*, 805 F.2d at 979 n. 13.

elements of a plaintiff's trade dress renders that trade dress indistinct only if the third party use is so extensive and so similar to the plaintiff's that it impairs the ability of consumers to use the trade dress of the products to identify their source." *Ambrit*, 805 F.2d at 980; *cf. University of Georgia Athletic Association v. Laite*, 756 F.2d 1535, 1545–46 (11th Cir.1985); *Sun Banks of Florida v. Sun Federal Savings & Loan*, 651 F.2d 311, 316–17 (5th Cir. 1981). At this time in the litigation no evidence has been presented which shows that third-party usage has been so extensive as to undermine the inherent distinctiveness of plaintiff's trade dress.

**B. Functionality**

■■■■ "Trade dress is protectible under section 43(a) only if it is primarily nonfunctional." *Ambrit*, 805 F.2d at 981. The court finds that the only functional aspect of plaintiff's trade dress is that the molded plastic bottle serves the necessary function of holding the liquid pool cleaner. The function of containing a liquid product could be performed using a bottle of different shape or size and a product of a different color. *See John Harland*, 711 F.2d at 982–83 n. 27; *cf. Sicilia Di R. Biebow & Co. v. Cox*, 732 F.2d 417, 427–30 (5th Cir. 1984); *In re Morton–Norwich Products, Inc.*, 671 F.2d 1332, 1340–43 (C.C.P.A.1982). There was testimony by plaintiff's president that the clear bottles were more expensive than opaque ones would be. The court therefore finds that plaintiff's trade dress is primarily nonfunctional.

**C. Likelihood of Confusion**

"[T]he touchstone test for a violation of § 43(a) is the 'likelihood of confusion' resulting from the defendant's adoption of a trade dress similar to the plaintiff's." *Original Appalachian Artworks, Inc. v. Toy Loft, Inc.*, 684 F.2d 821, 831–32 (11th Cir.1982). "In determining whether a likelihood of confusion exists, the fact finder evaluates a number of elements including: the strength of the trade dress, the similarity of design, the similarity of the product, the similarity of retail outlets and purchasers, the similarity of advertising media used, the defendant's intent, and actual confusion." *Ambrit*, 805 F.2d at 981. The weight which should be accorded each of these factors depends upon the circumstances of the case. *Id.* at 981–82.

**1. Strength of the Trade Dress**

■■■■ The strength of a particular trade dress is determined by its standing in the marketplace: in particular, by the category into which the trade dress falls and by the extent of third party uses. *Ambrit*, 805 F.2d at 982; *John Harland*, 711 F.2d at 973–75. As the court stated above, plaintiff's trade dress falls into the category of suggestive rather than those of arbitrary, descriptive, or generic. In addition, there has been some third party usage of elements of plaintiff's trade dress. The court on the basis of these factors finds that plaintiff's trade dress should be accorded relatively weak protection.

**2. Similarity of Design**

■■■■ "Similarity of design is determined by considering the overfall impression created by the mark as a whole rather than simply comparing individual features of the marks." *Exxon Corp. v. Texas Motor Exchange of Houston, Inc.*, 628 F.2d 500, 504 (5th Cir.1980). It is sufficient if there is initial, confusing similarity between the products; it is not necessary that close examination and comparison of them reveal no differences. *Chevron*, 659 F.2d at 704. The court finds that it is clear the initial trade dress of defendants' product was similar in design to plaintiff's. The two products give the same overall appearance and can only be distinguished through a careful look at their details. The court also finds that, although it is less clear, the second and third trade dresses defendants used on their product are also similar in design to plaintiff's. Although the logo was altered and the block areas removed, the overall visual effect of defendants' trade dress remains very similar to that of plaintiff's. *Cf. Ambrit*, 805 F.2d at 983–85; *John Harland*, 711 F.2d at 975–76; *Sun–Fun Products v. Suntan Research & De-*

*velopment,* 656 F.2d 186, 189–90 (5th Cir. Unit B Sept. 1981).

### 3. Similarity of the Products

The two products are the same type of pool cleaner. Plaintiff claims its product is superior.

### 4. Similarity of Retail Outlets and Purchasers

"Likelihood of confusion is more probable if the products are sold through the same channels to the same purchasers." *Ambrit,* 805 F.2d at 985. Defendants' and plaintiff's products are both sold through the same channels to similar purchasers. There was evidence they are sometimes displayed side by side. Defendants formerly sold plaintiff's product in the same manner in which they now offer their own for sale.

### 5. Similarity of Advertising Media

"If the plaintiff and defendant both use the same advertising media, a finding of likelihood of confusion is more probable." *Ambrit,* 805 F.2d at 985. Plaintiff advertises in trade magazines, distributes brochures, gives out samples, and uses point of sale display. Although evidence concerning defendants' promotional methods is sparse, there was testimony that samples were distributed and that some stores placed defendants' produce in plaintiff's point of sale display. Thus, to a certain extent, similar promotional efforts were made.

### 6. Defendants' Intent

■ A deliberate attempt to capitalize on another's good will by adopting a confusingly similar trade dress should be considered an important factor. *John Harland,* 711 F.2d at 977. Defendants' officer averred that when he designed the trade dress for its new product he referred to plaintiff's trade dress and to that used for three other pool cleaning products. He said he concluded that a blue liquid, clear container, and white lettering were standard features for this type of product and so he decided to incorporate them into his trade dress design. Plaintiff, however, introduced evidence which showed that numerous other pool cleaners are packaged in very dissimilar containers.

■ The facts that defendants admittedly used plaintiff's trade dress as a reference point in designing its own trade dress, along with the striking overall visual similarity between the parties' trade dress, indicates that defendants intentionally designed a bottle which was sufficiently similar to plaintiff's to permit it to capitalize on plaintiff's good will. "It is so easy for a business man who wishes to sell his goods upon their merits to select marks and packagings which cannot possibly be confused with his competitors that 'courts look with suspicion upon one who, in dressing his goods for the market, approaches so near to his successful rival that the public may fail to distinguish between them.'" *Chevron,* 659 F.2d at 704, *quoting Florence Manufacturing Co. v. J.C. Dowd & Co.,* 178 F.2d 73, 75 (2d Cir.1910). In addition, the fact that defendants' first and second trade dresses indicated the product had been manufactured by the "Crystal Clear Chemical Company" when no such company existed indicates it intended to convey the impression that the product had been manufactured by the makers of "Crystal Clear," plaintiff's product. The court finds that there is sufficient circumstantial evidence of intent to conclude defendants intended to capitalize on plaintiff's good will by adopting a confusingly similar trade dress.

### 7. Actual Confusion

■ The only evidence presented of actual confusion by consumers between plaintiff's and defendants' product was the testimony by plaintiff's president that he has received complaints regarding confusion between plaintiff's product and the defendants' first and second trade dress. Although this evidence of actual consumer confusion is slight, the absence of evidence of actual confusion does not necessarily show that no confusion has occurred. *Chevron,* 659 F.2d at 704. Evidence of actual confusion is not a prerequisite to a

finding of likelihood of confusion. *Sun-Fun*, 656 F.2d at 191. Where, as here, the competing products are relatively inexpensive and their essential characteristics are identical "[i]t is likely that many consumers who were confused never realized they had been confused and that many of those who did realize they had been confused chose not to spend their time to register a complaint with a faceless corporation...." *Ambrit*, 805 F.2d at 987. In addition, defendants' product has only been on the market a few months. "[W]hen a suit for injunctive relief from a competitor's use of a deceptively similar mark or package is brought at the incipiency of the alleged infringement, [plaintiff need not wait for proof of actual confusion before bringing suit]." *Keebler Co. v. Rovira Biscuit Corp.*, 624 F.2d 366, 377 (1st Cir. 1980). The court finds that there is some evidence that actual consumer confusion has resulted from defendants' trade dress.

] In sum, the court finds that plaintiff's trade dress merits only weak protection, that defendants' trade dresses were and are similar in design to plaintiff's, that the products are identical, that the products are sold through similar retail outlets to similar purchasers, that, to a limited extent, similar promotional efforts are used to promote both products, that defendants intended to capitalize on plaintiff's good will by utilizing a confusingly similar trade dress, and that there is some evidence that there has been actual consumer confusion. These factors, when weighed together, establish a likelihood of confusion between plaintiff's product and defendants'.

Plaintiff has thus satisfied the three essential elements of its trade dress claim: inherent distinctiveness, nonfunctionality, and likelihood of confusion. The court accordingly finds plaintiff has demonstrated there is a substantial likelihood it will prevail on the merits of its trade dress claim at trial.

**2.** Although defendant previously marketed its product under other names, it has stated that it will not utilize these prior designations in the future. It is therefore unnecessary to consider injunctive relief against defendants' use of these

## II. *Trademark Infringement*

"Infringement of a registered mark is governed by a provisions of 15 U.S.C. § 1114(1), which imposes liability against 'use ... likely to cause confusion, or to cause mistake, or to deceive.'" *Amstar Corp. v. Domino's Pizza, Inc.*, 615 F.2d 252, 258 (5th Cir.) (quoting the statute), *cert. denied*, 449 U.S. 899, 101 S.Ct. 268, 66 L.Ed.2d 129 (1980).

] Analysis of likelihood of confusion in the trademark context employs essentially the same factors as those weighed with regard to trade dress, but the scope of inquiry into similarity of design is considerably narrower. *Sun-Fun*, 656 F.2d at 192; *see John Harland*, 711 F.2d at 972 (lists factors); *Safeway Stores, Inc. v. Safeway Discount Drugs*, 675 F.2d 1160, 1163–64 (11th Cir.1982), (same); *Amstar*, 615 F.2d at 258–59 (same). The primary inquiry in a trademark action is not similarity in the overall trade dress of the goods but rather similarity of the registered mark. *Sun-Fun*, 656 F.2d at 192. In light of the extensive discussion above on plaintiff's trade dress claim, it is unnecessary to explain in great detail the very similar reasoning process the court is applying to the trademark infringement claim.

Plaintiff holds the registered marks Super Blue C–C, Super Blue Crystal–Clear, and Crystal Clear (with design). Defendants' pool cleaner is currently marketed under the name Super Aqua Brite and there is a statement on the back of the bottle that the cleaner is distributed by the Crystal Brite Chemical Company.[2]

### A. Type of Trademark

 The court finds that plaintiff's marks are suggestive rather than descriptive, arbitrary, or coined. *John Harland*, 711 F.2d at 974–75. No significant evidence of third-party usage has yet been presented to the court. There was some

prior designations. Plaintiff's claim for damages upon the basis of these prior designations is more appropriately resolved at a later stage in the litigation.

evidence that customers request "Super–Blue" or "Crystal Clear." The court finds that the plaintiff's marks are entitled to moderate protection. *Id.*

## B. Similarity of Design

The marks contain certain similarities. Each includes the word "Super" and incorporates a graphic design which includes peaks. The words "Swimming Pool" and "Clarifier & Polisher" are placed adjacent to defendants' logo, while the words "Swimming Pool Water Polisher" is next to plaintiff's. Both logos are suggestive of sparkling clean pool water. There are also significant differences, however. Plaintiff's logo includes the name, Robarb, in prominent letters and the product name is placed diagonally across a solid wave design. Defendants' product name is placed straight across the top and bottom of a square white field with a mermaid and crown design in the middle. The bottles use different typefaces. The back of defendants' bottle contains a smaller version of the logo used on the front; the back of plaintiff's bottle includes a wave design with the words "Crystal–Clear" across it. On the back of defendants' bottle is a statement in small print that the cleaner is manufactured by Crystal Brite Chemical Co. On the back of plaintiff's bottle is a statement in larger print that the cleaner is manufactured by Robarb. Although certain similarities exist between the marks of the two products, when they are considered in isolation from the product's trade dress they convey different overall impressions. *See generally John Harland,* 711 F.2d at 975–76; *Sun–Fun,* 656 F.2d at 189–90; *Amstar,* 615 F.2d at 260–61.

## C. Actual Confusion

As found in regard to plaintiff's trade dress claim, evidence of actual confusion between the parties' products is slight. There is no evidence at the present that any actual confusion has not been solely attributable to their confusingly similar trade dress.

## D. Other Relevant Factors

As previously determined, the products are extremely similar. The products are sold through similar retail outlets to similar purchasers. To a certain extent, the companies' promotional efforts have been similar. The same evidence which indicated defendants intended to capitalize on plaintiff's reputation by adopting a confusingly similar trade dress also indicates defendants intended to adopt a confusingly similar product mark, except that the marks bear a much lower degree of similarity than do the trade dresses.

In sum, plaintiff's marks are entitled to moderate protection; certain similarities exist between the two marks but they convey different overall impressions; there is no evidence at present of actual confusion; the products are extremely similar and are sold through similar purchasers; the companies' promotional efforts have, to a certain extent, been similar; and the evidence indicates defendants intended to adopt a trademark which is confusingly similar to plaintiff's. After weighing these factors, the court finds plaintiff has demonstrated there is a substantial likelihood it will prevail on the merits of this trademark infringement claim at trial.

Plaintiff claims, in addition, that defendants' use of the name Super Aquabrite and the statement on its bottle that Super Aquabrite is manufactured by the Crystal Brite Chemical Company constitutes a false designation of origin, false description, and fraudulent statement. The test for such an alleged infringement is whether the purchasers of the plaintiff's and defendants' products "are likely to confuse [defendants'] product as being rendered, authorized, sponsored, or endorsed by [plaintiff]." *Jellibeans, Inc. v. Skating Clubs of Georgia, Inc.,* 716 F.2d 833, 839 (11th Cir.1983). In making this determination the court must, once again, use the same factors it examined above in relation to plaintiff's other trademark infringement claim. *Id.* at 840.

Concerning the factor of similarity of design, plaintiff's mark "Super Blue CC" and the portion of its logo which states

"The Original Crystal Clear" have some similarities to the names Super Aquabrite and Crystal Brite Chemical Company. Super Blue CC and Super Aquabrite both begin with the word Super and include a word which indicates the color blue. Crystal Clear and Crystal Brite are markedly similar. Thus, the two products can be said to have great similarity in their trade names. As has previously been determined, plaintiff's marks are entitled to moderate protection, there is no evidence at present that there has been actual confusion between the marks, the products are extremely similar, they are sold through similar retail outlets to similar purchasers, the companies' promotional efforts have to a certain extent been similar, and there is evidence that defendant intended to capitalize on plaintiff's reputation by adopting a confusingly similar trade name. These factors, when considered *in toto*, indicate it is likely that purchasers of the two products will confuse defendants' product as being one which is manufactured by the plaintiff. Particularly telling is the fact that defendants' bottle states it is manufactured by Crystal Brite Chemical Company. Plaintiff has thus demonstrated there is a substantial likelihood it will prevail on this false designation of origin claim.

 Plaintiff also claims that it is the owner of a common law trademark on the phrase "Water Polisher" and that defendant is infringing of this trademark. Plaintiff has failed to demonstrate, however, that this phrase is anything more than a generic description. Generic words or phrases, even when they are incorporated by a business as a portion of its trademark or trade dress, may be freely used by competitors. *See Jellibeans, Inc.,* 716 F.2d at 8451 n. 19; *Harland,* 711 F.2d at 975–76.[3]

### III. *Copyright Infringement*

] Plaintiff claims that it holds a copyright concerning the textual material printed on its bottle and that the textual material on defendants' bottle has infringed that copyright. The textual material on plaintiff's bottle consists of a description of the product and directions for using it. Language which "is purely descriptive or deals with directions and cautions" is not accorded copyright protection. *Alberto–Culver Co. v. Andrea Dumon, Inc.,* 466 F.2d 705, 711 (7th Cir.1972), citing *Kitchens of Sara Lee, Inc. v. Nifty Foods Corp.,* 266 F.2d 541, 544 (2d Cir.1959). *Cf. Dow Jones & Co. v. Board of Trade,* 546 F.Supp. 113, 116 (S.D.N.Y.1982) (labels which are merely descriptive and have no other value than their descriptive function and no possible influence upon science and useful arts are not entitled to copyright protection.). "[M]ere distinctiveness in typographic ornamentation will not ordinarily qualify otherwise non-copyrightable material for copyright protection." *Id.* Plaintiff has therefore not demonstrated a substantial likelihood it will prevail at trial on the merits of its copyright claim.

Plaintiff has thus demonstrated a substantial likelihood it will prevail on the merits at trial concerning its trade dress claim and certain of its trademark infringement claims. It has failed to demonstrate a substantial likelihood it will prevail on the merits of its copyright infringement claim.

---

**3.** Plaintiff also argued it is entitled to relief on the bases of the Georgia Uniform Deceptive Trade Practices Act, O.C.G.A. § 10–1–372 (Michie 1982), and the common law restrictions on unfair competition and infringement. The key test for each of these is likelihood of confusion and thus it appears that application of this statute and these common law provisions to plaintiff's trade dress and trademark claims will yield the same result as that reached under the federal claims. *See Amstar,* 615 F.2d at 258–59. The court accordingly finds that the plaintiff is adequately protected from any violation of the Georgia Uniform Deceptive Trade Practices Act or the common law on unfair competition or infringement by the injunctive relief which is granted on the federal claims.

Georgia anti-dilution statute prohibits such use of another's trademark or label as will lessen the uniqueness of the prior user's mark. O.C.G.A. § 10–1–451(b) (Michie 1982); *Amstar,* 615 F.2d at 265. Under it, the plaintiff need not show that the parties are competitors nor must plaintiff show evidence of actual confusion. The court finds that the plaintiff is adequately protected from any violation of this act by the injunctive relief which is granted on the federal claims.

█ Plaintiff has also demonstrated a substantial threat of irreparable harm. Where a plaintiff has made a showing of substantial likelihood of confusion between its product and an allegedly infringing competitor's, risk of irreparable injury may be presumed as a matter of law. *E. Remy Martin & Co. v. Shaw–Ross International Imports, Inc.*, 756 F.2d 1525, 1530 & n. 14, 1534 & n. 36 (11th Cir.1985).

It appears that the benefits an injunction would provide the plaintiff would outweigh the harm it would cause the defendants. The plaintiff has used these marks and this trade dress for a number of years and revenue from this product is one of its main sources of revenue. Defendants have only used their trade names and trade dress for a few months and can shift to a non-infringing trade name and dress.

Finally, issuance of an injunction would not harm the public interest. An injunction would serve the public interest by protecting consumers from confusion between the plaintiff's and defendants' products. The court therefore finds that it is appropriate to issue a preliminary injunction.

## CONCLUSION

It is hereby ORDERED that plaintiff's motion for a preliminary injunction is GRANTED to the extent indicated by this opinion. An appropriate order will be issued.

## ORDER OF COURT

Defendants, their officers, agents, servants, employees, attorneys and representatives, and all other persons in active concert or participation with them, and their successors and assigns, are enjoined and restrained during the pendency of this action from:

(1) Offering for sale, selling, advertising, or manufacturing any swimming pool water cleaner which is either

(a) blue in color and bottled in a clear container, unless a majority of the surface area of the printing on the bottle (other than the portion of the printing which describes the correct dosage and gives directions for use) is in a color other than white; or

(b) bottled in a blue opaque container, unless a majority of the surface area of the printing on the bottle (other than the portion of the printing which describes the correct dosage and gives directions for use) is in a color other than white.

(2) Offering for sale, selling, advertising, or manufacturing any swimming pool water cleaner under the name "Aqua Brite" or under any name which consists of the combination of the name of a shade of blue followed by a synonym for the words clear or bright.

(3) Expressly or impliedly representing themselves to be affiliated in any way with plaintiff in connection with the sale, offering for sale, distribution, advertising, or promotion of swimming pool or spa products;

(4) Representing by words or conduct that any products provided, offered for sale, sold, advertised, or manufactured by defendants are authorized, sponsored, or endorsed by or otherwise connected with the plaintiff and, in particular, from indicating on any of its pool care products that they are manufactured by either the Crystal Clear Chemical Company or the Crystal Brite Chemical Company.

This order is expressly conditioned upon plaintiff's posting of a bond in the amount of ten thousand dollars ($10,000.00) within ten (10) days from the entry of this order.